Frank P. Phinney, Administrator of the Estate of Robert S. Phinney, Deceased, v. The Illinois Central Railroad Company, Appellant, and The Dubuque & Sioux City Railroad Company.

Railroads: assumption of risk. A servant in entering into a hazardous employment does not assume the risk of his master's negligence, nor that of his coemploye.

Negligence. The fact that of two persons put in equal peril, one escapes and the other is killed, is not conclusive of the negligence of the one injured.

Negligence: instinct of self-preservation. The presumption of an exercise of the instinct of self-preservation only obtains where there is no direct evidence on the question whether the person injured was exercising due care at the time of the injury. As applied to the facts in this case the jury were properly instructed to take this presumption into consideration.

Negligence: proximate cause. Negligence of a train dispatcher, resulting in a threatened collision, to avoid which an emergency stop of one train is made whereby an accident occurs, is the proximate cause of the injury.

Evidence: negligence: submission of issue. In an action to recover for the death of a trainman, killed as a result of an emergency stop to avoid a collision with another train running over the tracks of defendant under orders of its train dispatcher, the evidence is examined and it is held to show no negligence on the part of the dispatcher and that, the submission of that issue to the jury was error.

*Appeal from Cherokee District Court.*—Hon. Geo. W. Wakefield, Judge.

Friday, January 29, 1904.

Action to recover damages for the death of plaintiff's intestate, who died as the result of injuries received while

in the employ of the Illinois Central Railroad Company as brakeman. The jury returned a verdict in favor of the defendant, the Dubuque & Sioux City Railroad Company, the owner and lessor of the line of road on which the accident happened, and against the defendant the Illinois Central Railroad Company, the lessee of the road, which will be treated in the opinion as the sole defendant. From judgment on the verdict against it, the Illinois Central Railroad Company appeals.—*Reversed.*

*W. S. Kenyon* and *E. C. Herrick* for appellant.

· *A. R. Molyneux* and *J. D. F. Smith* (*J. M. Dickinson,* of counsel), for appellee.

McCLAIN, J.—The defendant, the Illinois Central Railroad Company, was in August, 1900, the lessee of a line of road belonging to the defendant, the Dubuque & Sioux City Railroad Company; and a portion of this line, extending east and west through Le Mars and Merrill, between which two places this accident happened, was also used by the Chicago, St. Paul, Minneapolis & Omaha Railroad, under some arrangement by which its trains were run over the track under the rules and on the time card of the Illinois Central Railroad, and under the direction of the train dispatcher of the latter. Deceased was a brakeman on a construction or gravel train which had been operating between Le Mars and Merrill, and on the evening of August 31st, about half past 9 o'clock, one Fletcher, who was the conductor of the train, and the deceased were standing on a flat car, which, as the train was backing eastward toward Le Mars, was the front car of a train of about sixteen cars. Fletcher, the conductor, testifies that, when they were about a mile and a half from Le Mars, they saw the headlight of a train approaching them, coming from the east, and, to avoid a collision, they gave emergency signals with their lanterns to cause their train to stop; that the engineer, in response to these signals, applied the emergency air brake, which

brought the train, which was running about twelve or thirteen miles an hour, to a sudden stop, within four or five car lengths; and that, as the result of this sudden stopping of the train, deceased was thrown forward and fell off the flat car and under the wheels, which ran over him, inflicting injuries from which he died within twenty-four hours. The train which was coming from the east proved to be a train of the Chicago, St. Paul, Minneapolis & Omaha Road, and it also was stopped when it was within fifteen feet of the train on which deceased was riding. These essential facts with reference to the occurrence of the accident will be sufficient to furnish a basis for the discussion of the principal questions of law involved in the action, and other facts material on particular questions will be stated hereafter.

The case was tried and the jury was instructed with reference to two claims of negligence as against the defendant: First, that the engineer and conductor of the Chicago, St. Paul, Minneapolis & Omaha train, which will hereafter be designated as the Omaha train, were negligent in running such train west from Le Mars contrary to orders, and thus occasioning the accident, and that the defendant was responsible for their negligence; and, second, that the train dispatcher of the defendant company was negligent in giving to the conductor and engineer of the Omaha train misleading orders, which caused them to proceed west from Le Mars, and thus brought about the accident. Under the evidence, however, it does not appear that there were any such arrangements between the two roads using this track in common as to make the defendant liable for negligence of the servants of the Chicago, St. Paul, Minneapolis & Omaha Road, and we are inclined to think that the trial court erred in submitting to the jury any issue with reference to the liability of the defendant company for the negligent acts of the servants of the other company. In view, however, of a special finding by the jury that the conductor and engineer operating the Omaha train did not have notice that the construction train of the defendant was on the track between Le

Mars and Merrill, there was, perhaps, no prejudice from the erroneous submission of this question; and, as counsel for appellee do not seek to sustain the recovery on the ground of any such negligence, we need not further consider this branch of the case.

Counsel for appellant ask a reversal of the judgment against defendant, assuming that it is predicated on negligence of the train dispatcher in giving erroneous and misleading orders to the conductor and engineer of the Omaha train, on substantially four grounds, which will be considered in order, to wit, assumption of risk by the deceased, contributory negligence on the part of the deceased, lack of immediate causal connection between the alleged negligence and the injury, and that the orders given were not misleading, and did not authorize the Omaha train to proceed west of Le Mars until the conductor and engineer in charge of that train were advised that the construction train of defendant had reached either Le Mars or Merrill, and thus left the track clear. As, in the event of a new trial, these questions may again arise, it is necessary that we at least briefly consider all of them.

I. With reference to assumption of risk, it is sufficient to say that by entering into an employment, even though it be hazardous, the servant does not assume the risk of negli-

I. ASSUMPTION of risk. gence of his principal; nor, if he is employed in the operation of a railway, does he assume, in this state, in view of the provisions of Code, section 2071, which makes a railway company liable for damages sustained by an employe in consequence of the negligence of a co-employe, the risk of negligence of his co-employes. If, therefore, the accident resulted from the negligence of the train dispatcher, recovery is not precluded by any rule of law relating to assumption of risk. *Pullman Palace Car Co. v. Laack;* 143 Ill. 242, 256 (32 N. E. Rep. 285, 18 L. R. A. 215); *Chicago, B. & Q. R. Co. v. Avery,* 109 Ill. 314, 322; *Ford v. Lake Shore & M. S. R. Co.,* 124 N. Y. 493, 498 (26 N. E. Rep. 1101, 12 L. R. A. 454). Counsel for

appellant cite many authorities in support of the proposition that one who enters upon the hazardous employment of engaging in the operation of railroad trains assumes the risks incident thereto, and contend that one of these risks is the danger involved in the sudden stopping of a train in response to an emergency signal; but we think that he does not assume the risk that such an emergency stop will be rendered necessary by the negligence of his co-employes. The fault with which defendant is charged is not that of the engineer of the defendant's train in improperly managing it, but the fault of the train dispatcher in sending or permitting another train upon the track so as to threaten a collision, thus rendering the emergency stop necessary, and bringing about the consequences involved in such a sudden stoppage of the train.

II. The only evidence tending to show contributory negligence on the part of deceased, if any there be, is found in the fact that, when the train on which he was riding was suddenly stopped, he plunged forward over the end of the flat car on which he was standing, 2. NEGLIGENCE. and fell under the wheels, while the conductor, who stood beside him, was able, as he testifies, without difficulty, to save himself from thus falling. So far as the accident constitutes affirmative evidence, it certainly was not conclusive, and was for the consideration of the jury. The fact that, of two persons put in equal peril, one escapes, and the other is killed, certainly is not in itself conclusive that the one injured was negligent.

But the principal contention of counsel on this branch of the case is that the court erred in instructing the jury that they might take into account the instinct of self-preservation as evidence of the exercise of proper care and 3. NEGLIGENCE: instinct of selfpreservation. caution on the part of deceased, and this instruction is of vital importance, in view of the rule in this state that plaintiff has the burden of proving in such cases freedom from contributory negligence by the person injured. The rule as to the inference which may be

drawn from the instinct of self-preservation has been fully discussed in recent cases in this court, and need not be elaborated. The consideration of the instinct of self-preservation is to be limited to cases in which there is no direct evidence bearing on the question whether or not the injured party was in the exercise of due care at the time when the injury occurred. *Bell v. Clarion,* 113 Iowa, 126; *Ames v. Waterloo & C. F. R. T. Co.,* 120 Iowa, 640. The only difficulty is in determining the applicability of the rule under the facts of this case. All the evidence there is with reference to the circumstances attending the fall of deceased from the car is that of Fletcher, the conductor. His testimony is that he and the deceased were standing side by side, about one-third of the length of the car, which was about thirty-three feet long, from the forward end, and both facing forward; that, when the train was suddenly checked in response to their violent signals with their lanterns, he was thrown two or three steps forward, but, by bracing himself in anticipation of the checking of speed which would result from the response to these signals, he had no difficulty in avoiding being thrown off; and that the deceased was thrown forward right over the end of the car. It is evident, therefore, that the question of the negligence of deceased hinges entirely upon whether he used reasonable care and caution in bracing himself in anticipation of the shock which he should have anticipated as resulting from the signals. If he did this, and was nevertheless thrown off the car, he was not guilty of contributory negligence. He was, so far as appears, not otherwise negligent. No suggestion is made as to anything which he could have done to avoid being thrown off, except to brace himself as best he might. Now, it is evident that as to this pivotal question we have no evidence whatever. True, the conductor stood beside him, but the conductor could not determine what effort deceased made to avoid the injury, for the proper effort to make in the exercise of due care was one not subject to the observation of the conductor, in the darkness, or at least it was not the subject of any observation by

the conductor. We reach the conclusion, therefore, that as to the immediate cause of the fall of deceased from the car there was no direct evidence, and that the jury were properly instructed that they might take into account the instinct of self-preservation in determining whether deceased was in the exercise of due care. The case is much like that of *Schnee v. Dubuque,* 121 Iowa 459, in which we held that, although a witness saw a boy immediately before a fall from a sidewalk, and immediately after he had fallen, there was no direct evidence as to whether he was exercising due care in protecting himself against such fall. The case is also like that of *Bell v. Clarion, supra,* in which it appeared that the husband of the woman who was injured was walking just ahead of her, but, on hearing an exclamation from his wife, looked back and saw that she had been injured by the plank of a sidewalk flying up into her face as she stepped upon it. Although in that case we held that the jury were improperly instructed with reference to the consideration which they might give to the instinct of self-preservation, we did say that the case was one in which the instinct of self-preservation might properly be considered.

III. It seems to us there can be no reasonable question that if the Omaha train proceeded westward from Le Mars by reason of the negligence of the defendant's train dis-

4. NEGLIGENCE: proximate cause. patcher in giving the orders under which the engineer and conductor of that train were acting, and danger of a collision between that train and defendant's construction train was thereby occasioned, the negligence of the train dispatcher was the proximate cause of the accident to deceased. The very thing which happened was brought about by the imminent danger of a collision. It is true that the act of the conductor of defendant's train in making the emergency stop was intermediate in time between the negligence of the train dispatcher and the happening of the accident, and, in one sense, caused the accident. But in determining the proximate cause, we must look to the direct and efficient cause—that is, the thing amiss—and

determine whether the injury resulted therefrom. An intervening human agency may break the connection between the negligent act and the subsequent injury, but that agency must act either independently of the preceding negligence, or the intervening action must have been negligent, so as to constitute an independent proximate cause, in order to break the connection between the wrong complained of and the injury. Thus in *Parmenter v. Marion,* 113 Iowa, 297, it is said: "Defendant's negligence is not deemed the proximate cause of the injury when the connection is thus actually broken by a responsible cause. * * * In applying this rule or exception, it may be, to concurring acts, it is very generally held that, even if there be negligence in some degree on the part of the defendant, still it cannot ordinarily be said to be the proximate cause of an injury, when the negligence of another human agency has supervened and directly inflicted the injury." In *Knapp v. Sioux City & P. R. Co.,* 65 Iowa, 91, it was held that the breaking of an engineer's leg, resulting from his reversing the lever of his engine, without negligence on his part, in attempting to stop his train in case of an accident due to defective track was the proximate result of the defective condition of the track, so as to render the railroad company liable therefor. We have no hesitation in saying that, if the danger of a collision was brought about by the negligence of the train dispatcher, the defendant company was liable, under the evidence, as the jury construed it, for the death of deceased, as a proximate result of such negligence.

IV. Finally we reach the question whether there was any evidence of negligence on the part of defendant's train dispatcher, such as to justify the submission of the question to the jury. To understand the bearing of the evidence introduced as to this question, it is necessary to go into further detail as to the facts. The engine of the construction train with which deceased was working when he received the injury was designated in the train orders as "engine No. 483," and on the

5. EVIDENCE: negligence: submission of evidence.

31st of August the conductor and engineer of that train received an order "to work extra until 8:30 p. m. between Le Mars and Merrill." After being at work on this section of road, it returned to Le Mars in accordance with this order, and received another order, as follows: "To Conductor and Trainmen, Train No. ——, Engine No. 483, and Second and Inferior Class Trains West, at Le Mars Station: Engine 483 will work extra until 11:30 p. m. between Le Mars and Merrill. No. 152, engine unknown, will wait at Merrill until 9:45 p. m. for work extra engine 483." This order was received and receipted for by the conductor and the engineer of the construction train at 8:50 p. m., and they then proceeded with their train westward from Le Mars toward Merrill for the purpose of doing further work on the road. As appears from the testimony of Fletcher, the conductor, which is not questioned, this gave to the construction train the right to occupy the track between Le Mars and Merril, except as to trains running on regular schedule time, until 11:20, save that it must get out of the way for train No. 152, coming from the west, which was permitted to leave Merrill at 9:45 p. m. Train No. 152 was a regular, through freight train, which should have left Merrill at five minutes past 8, but it was late, and was ordered not to leave Merrill until 9:45, to enable the construction train to get out of the way. The Omaha train was an extra freight, and was within the description "Second and Inferior Class Trains," in the order quoted above, which was given to the construction train. At Le Mars the conductor and engineer of the Omaha train, which was hauled by engine No. 137, at 9:25 p. m., received and receipted for an order reading as follows: "To Conductor and Trainmen, Train No. ——, Engine 137, at Le Mars Station, Iowa: Engine 137 will run extra Le Mars to yard office. Number 152, engine 823, and extra engine 137 west, will meet at Merrill. Number 152 gets this order at Merrill." At the same time the conductor and engineer of the Omaha train received a duplicate of the order which had been given to the conductor and engineer of the con-

struction train, and which, as above indicated, was addressed not only to that train, but to "Second and Inferior Class Trains West," to which class the Omaha train belonged. The conductor and engineer of the Omaha train were thereby advised that the construction train was between Le Mars and Merrill, with the right to the track, and that while their train, pulled by engine No. 137, was to meet train No. 152 at Merrill, it was also to keep out of the way of the construction train. This is not only the construction which witnesses placed on these orders in giving their testimony, but it is the construction which is clearly indicated by the orders. The situation may seem complicated to one who attempts to figure out the relations of these three trains to each other, but it was not complicated so far as the conductor and engineer of each train were concerned. Train No. 152, coming east, was to wait at Merrill until 9:45, and, as soon after that as the train hauled by engine No. 137 arrived, it was to proceed westward from Merrill to Le Mars. Its conductor and engineer had no concern about the construction train, operated by engine No. 483, which was directed to be out of the way of train No. 152, leaving Merrill, east, not earlier than 9:45. The conductor and engineer of the construction train had no responsibility, save to get out of the way of train No. 152, as above indicated, and not to occupy the track between Le Mars and Merrill later than 11:20. The conductor and engineer of the Omaha train, drawn by engine No. 137, running extra, could leave Le Mars whenever the construction train arrived at Le Mars so as to leave the track clear, and could proceed westward to Merrill and meet train No. 152. If the construction train should go westward to Merrill in order to clear the track for No. 152, then another order would be necessary to authorize the Omaha train to leave Le Mars. But probably such a contingency was not contemplated. At any rate, the construction train was in fact approaching Le Mars in proper time to be out of the way of No. 152. If it be suggested

that there was an inconsistency between the order to the Omaha train that it look out for the construction train until 11:20, and nevertheless that it meet train No. 152 at Merrill, the answer is that such a contingency did not arise, and so far as the record shows, was not intended to arise. The construction train, under its order, must in fact be at Merrill at 9:45 to clear the track for No. 152, or reach Le Mars in such time as to be out of the way of No. 152, leaving Merrill not earlier than 9:45.

It was the plain duty of the conductor and engineer of the Omaha train to wait at Le Mars until the construction train came in, and thus leave the track clear, or until advised that the track was clear by reason of the arrival of the construction train at Merrill. It seems to us, from these orders, that the conductor and engineer of the Omaha train clearly violated their duty in starting west from Le Mars before the construction train arrived. No danger to any one was involved in their failure to meet train No. 152 at Merrill at 9:45, for the orders received by the conductor and engineer showed that train No. 152 must wait at Merrill until the Omaha train arrived. The defendant's train dispatcher had no reason to anticipate that the conductor and engineer of the Omaha train would violate the orders given, and proceed westward from Le Mars under such conditions as to interfere with the construction train. We think the orders given to the various trains were not capable of any other reasonable construction than that above indicated, but, if evidence was competent as to how they should be interpreted by the persons to whom they were sent, then we have the uncontradicted testimony of expert witnesses that they would be understood in the sense which their language, as we have considered them, imports. Reference is made in argument to a rule of the defendant company as follows: "When an order has been given to work between designated points, no other extra must be authorized to run over that part of the track without provisions for passing the work train." But if we have rightly interpreted the orders, they did not auth-

orize the Omaha train to go upon the track west of Le Mars until the construction train was out of the way. Counsel for appellee contend that the order given to the Omaha train should have advised it that the construction train was working between Le Mars and Merrill, but that is exactly the information that was given to the conductor and engineer of the Omaha train when the duplicate of the order directed to the construction train "and Second and Inferior Class Trains West at Le Mars" was given to them. Therefore the special finding of the jury that the conductor and engineer operating the Omaha train did not have notice at the time said train started west from Le Mars that the construction train was working between the limits of Le Mars and Merrill, and their general verdict, which must have been based on the finding that there was negligence on the part of defendant's train dispatcher in failing to direct them not to proceed west from Le Mars until the construction train was out of the way, were without support in the evidence. We reach the conclusion, therefore, that the case should not have been submitted to the jury on this basis.

V. Counsel for appellant complain of an instruction (paragraph 10 of the instructions given) which sets out at great length the questions for the jury to consider in determining whether plaintiff was entitled to recover. The attempt to discuss in one instruction different grounds of negligence relied upon, and the bearing of the circumstances which the jury might consider in connection with the accident, relating not only to negligence or want of negligence of the train dispatcher and the conductor and engineer of the Omaha train, but also to assumption of risk, contributory negligence, and proximate cause, was unfortunate. It is not usually safe, in a complicated case, to attempt to give all the law on all branches of the case, and all questions which may be involved, in one statement. We are inclined to think that the instruction was one calculated to mislead and to confuse the jury, rather than to assist them in applying the law to the facts. But in view of the conclusion reached

in the last preceding paragraph of this opinion, it is not necessary now to determine whether the instruction was so far confusing and misleading as to require a reversal, had there been any evidence tending to show that the orders given by the defendant's train dispatcher were in fact conflicting or improper.

The judgment of the lower court is REVERSED.