BREKER *v.* ROSEMA.

1. AUTOMOBILES—THROUGH HIGHWAYS—INTERSECTIONS—CROSSROADS
   —STOPPING.

   As a general rule through highways have a purpose and it is
   not necessary for a driver thereon to stop or slow up as he
   reaches an inferior crossroad to ascertain whether or not a
   driver on the latter road will observe the provisions of the
   law and the stop sign erected in accordance therewith
   (1 Comp. Laws 1929, § 4713, as amended by Act No. 318, Pub.
   Acts 1939).

2. SAME—TRUNK LINE HIGHWAYS—RIGHT OF WAY—STOPPING.

   Right of way accorded driver on a trunk line highway is more
   than mere privilege of going through the intersection in ad-
   vance of a car which reaches it at the same time, but, since
   drivers approaching trunk line are required to stop before
   entering intersection whether anyone is at or near the cross-
   ing or in sight on the trunk line, driver thereon is entitled to
   assume that those approaching it will obey the law and stop,
   hence he is not obliged to have his car under such control at
   each intersection that he may stop at once and avoid collision
   with persons who may illegally come into his path (1 Comp.
   Laws 1929, § 4713, as amended by Act No. 318, Pub. Acts
   1939).

3. SAME—TRUNK LINE HIGHWAYS.

   Motorist on a trunk line highway must keep such lookout ahead
   and to the sides and down intersecting highways as a rea-
   sonably prudent person would do in order to discover possible
   danger and must act carefully upon the existing conditions
   (1 Comp. Laws 1929, § 4713, as amended by Act No. 318,
   Pub. Acts 1939).

4. SAME—NEGLIGENCE—PLEADING—EVIDENCE.

   A driver cannot be convicted of negligence on a general charge
   that he did not exercise the care a prudent person would have
   used under the circumstances but it is necessary to prove the
   specific act he did or did not do.

---

Function of court and jury on issue of contributory negligence,
see 2 Restatement, Torts, § 476 and also § 285.

Burden of proving contributory negligence, see 2 Restatement,
Torts, § 477.

Right of an actor to expect that others will obey legislative en-
actments until he is given indication to the contrary, see 2 Re-
statement, Torts, § 290 and also comments (m) and (n) which dis-
cuss the question with respect to the issue of defendant's negligence.

5. Death—Contributory Negligence—Presumption of Due Care.
   Presumption which prevails in absence of testimony to contrary that one accidentally killed was free from contributory negligence is based on common knowledge that one will ordinarily exercise such care as is requisite for his own safety.

6. Same — Contributory Negligence — Presumptions — Eyewitnesses.
   Rule that presumption of freedom from contributory negligence does not apply where there are eyewitnesses to the accident is applicable only when eyewitnesses are able to throw light on the conduct of deceased driver for plaintiff prior to the accident such as decedent making observation in direction from which defendant approached or giving external evidences of seeing defendant's car approach.

7. Witnesses—Eyewitnesses—Amnesia—Death.
   Whether a witness was an eyewitness or not frequently does not depend upon his physical proximity to motorist suffering from amnesia as to what occurred, directly due to accident involved, or to a deceased motorist, so much as upon whether the claimed eyewitness was paying attention to the conduct of the motorist just before the accident.

8. Negligence—Contributory Negligence—Subjective Factors.
   Whether contributory negligence on the part of plaintiff's driver existed or not may depend upon factors which are externally visible but sometimes it depends upon what passes through the mind in coming to conclusions and forming judgments.

9. Automobiles—Contributory Negligence—Presumptions—Amnesia.
   In action for injuries sustained by passenger in car whose driver suffered concussion of brain in automobile collision in the nighttime with defendant who was admittedly negligent, whether or not plaintiff's driver was guilty of contributory negligence imputable to plaintiff was a question for the jury where he was conceded to be suffering from amnesia caused by the accident and plaintiff, although nearby and an eyewitness of the accident, does not appear to have observed her driver's conduct prior to the accident, plaintiff's driver being presumed to have used due care under the circumstances.

Appeal from Ottawa; Miles (Fred T.), J. Submitted April 8, 1942. (Docket No. 31, Calendar No. 41,925.) Decided May 18, 1942.

Case by Evelyn Breker against Harm Rosema for damages for personal injuries sustained in a

motor vehicle collision at an intersection. Verdict
and judgment for plaintiff. Defendant appeals.
Affirmed.

*Alexander, McCaslin & Cholette,* for plaintiff.

*Leo C. Lillie,* for defendant.

BUTZEL, J.   After dark on the evening of Febru-
ary 5, 1941, plaintiff was riding with her fiance, now
her husband, in an automobile which was proceed-
ing eastward on M-50.   Defendant was driving
northward on M-114.   Plaintiff was severely in-
jured in a collision between the two cars at the in-
tersection of the two roads. . M-50 is a straight
trunk line highway consisting of four lanes each
10 feet in, width and running east and west out of
Grand Rapids.   It is superior to M-114, which has
only two lanes each 10 feet in width and running
north and south (for a more detailed description
of the roads, see *Bunker* v. *Reid,* 255 Mich. 536, in-
volving an accident at the same intersection).   By
Act No. 318, Pub. Acts 1939 (Comp. Laws Supp.
1940, § 4713, Stat. Ann. 1941 Cum. Supp. § 9.1581),
the former law was changed so that it was made a
driver's unequivocal duty to come to a full stop
before entering a State trunk line highway. M-50
was such a highway and an unusually large sign of
36 inches in width reading "Stop" was just off
the east edge of the paved portion of M-114 be-
fore its intersection with M-50.   Defendant paid no
attention whatsoever to the stop sign, drove into the
intersection so that his car crashed into the rear
right side of the car in which plaintiff was riding.
At the time of the collision, the latter car had al-
most crossed the intersection, the front part of it
having already left the intersection.   Defendant

concedes his negligence but claims that plaintiff's driver was guilty of contributory negligence which must be imputed to plaintiff. The judge held that a jury question was presented. He refused to direct a verdict or grant a motion for judgment *non obstante veredicto*. The jury rendered a verdict of $2,500 in plaintiff's favor.

Plaintiff's driver suffered a concussion of the brain and was unconscious at the hospital for three days and has amnesia as to what happened immediately prior to the collision. Plaintiff introduced medical testimony that such amnesia is not an uncommon condition resulting from injuries of the nature that the driver suffered. The driver's testimony as to what he saw and did is as unavailable as if he had lost his life. Plaintiff claims a presumption of freedom from contributory negligence on that account and that if the presumption does not prevail that at least a jury question was presented. Defendant, however, claims that the presumption of freedom from contributory negligence disappears because plaintiff was an eyewitness and testified as to the events leading up to the accident. Plaintiff did testify as to what she saw and what was plainly to be seen. It can hardly be claimed that plaintiff's driver, who had as good an opportunity as plaintiff to see the approaching car, could not or did not see what was plainly to be seen. It would appear that both cars were traveling between 35 and 40 miles an hour, and that plaintiff saw defendant's car when both cars were from 150 to 200 feet from the point of collision. There were no buildings or obstructions that interfered with the view of either of them. It, however, was dark, and while it may be difficult for one facing an oncoming car in the daytime to tell the exact speed with which it is being driven, it becomes still more difficult for

one without expert knowledge to determine such speed at nighttime, unless the oncoming car passes him. Evidently the cars were each coming at a speed of from 35 to 40 miles an hour, as they arrived at the intersection at about the same time, the car in which plaintiff was riding entering the intersection a little before defendant's car.

Defendant offered no testimony whatsoever so that we have only that of plaintiff to the effect that the cars were traveling at practically the same rate of speed. Plaintiff's driver, though without any memory as to what occurred immediately before the collision, did testify that he is very familiar with the intersection as he traveled the same road at least once a day going to and from his work, and that he knew the stop sign was there requiring all cars to stop.

This is not a case where one enters an intersection just at a time when he sees another approaching at a very rapid rate of speed, knows he will not stop and has plenty of time in which to protect himself, or where the driver, who has not observed the stop sign, has entered the intersection first and there is time for the driver on the favored road to avoid a collision. It is, rather, a case where an ordinarily prudent driver on a favored road might have good reason to believe that the driver on the inferior road would observe the stop sign as required by the law and particularly so when the driver of the car on the favored road was arriving at almost the same time and knew the stop sign was there. The cars could have been stopped in 40 or 50 feet at the speed they were going. The plaintiff's driver could not tell until he was within 40 or 50 feet of the intersection whether defendant would observe the stop sign or not, and then, if it were not observed, it would be too late for plain-

tiff's driver to bring his car to a full stop at the rate it was going. As a general rule through highways have a purpose and it is not necessary for a driver thereon to stop or slow up as he reaches an inferior crossroad to ascertain whether or not the driver on the latter road will observe the provisions of the law and the stop sign erected in accordance therewith.

No two cases are alike. Cases may arise where under certain circumstances the driver on a favored road may be guilty of contributory negligence. Assuming that the driver saw what was plainly to be seen, it at least becomes a jury question whether he, as a reasonable man, would not expect the car on the inferior road to observe the law and stop under the circumstances. We believe that the following language from *Arnold* v. *Krug*, 279 Mich. 702, is applicable:

"The right of way accorded to a driver upon a trunk line highway is something more than the privilege of going through the intersection in advance of a car which reaches it at the same time. Drivers approaching the trunk line are required to stop before entering the intersection whether anyone is at or near the crossing or in sight on the trunk highway. It is an improved road—usually hard surfaced. Its purpose is to afford rapid transit. The driver is entitled to assume that those approaching it will obey the law and stop. He is not obliged to have his car under such control at each intersecting road that he may stop at once and avoid collision with persons who may illegally come into his path.

"On the other hand, he must keep such look-out ahead and to the sides and down intersecting highways as a reasonably prudent person would do in order to discover possible danger and must act carefully upon the existing conditions.

"A driver cannot be convicted of negligence on a general charge that he did not exercise the care a prudent person would have used under the circumstances. It is necessary to charge and prove the specific act he did or did not do. Wallace was driving on the right side of the road at a very reasonable rate of speed and with his truck under control. The only claim of fault which could be made against him, and which the court found, is that he failed to reduce his speed as he neared the intersection. But to what rate should he have reduced the speed? It is evident that, to have avoided the collision, he would have had to so slacken his speed that he could have stopped well within 30 feet. To impose such a duty on drivers upon trunk line highways would seriously impair their purpose, be foreign to the general conception of careful drivers of their rights and duties upon them, in large measure destroy the preferential right of way, and offer inducement to drivers approaching on intersection roads to violate their legal duties. It is not the rule as a matter of law."

See, also, *Potter* v. *Felician Sisters Home for Orphans,* 281 Mich. 101; *Campbell* v. *Osterland,* 283 Mich. 175; *Rife* v. *Colestock,* 297 Mich. 194.

The contention, however, is made that the burden is upon plaintiff to show that the driver of the car in which she was riding was free from contributory negligence. Plaintiff contends, however, that the facts and circumstances show that the driver exercised due care or at least present a jury question; and further that, inasmuch as the driver could not testify as to facts that were deleted from his memory through amnesia, the presumption of due care prevailed the same as if he had met his death unless the contrary was shown by testimony of eyewitnesses.

Two questions arise. First, should such presumption be indulged if there was an eyewitness who saw the accident but who did not see the driver's conduct prior to the accident? In *Fairchild* v. *Railway Co.*, 250 Mich. 252, we held:

"That there were witnesses who saw and heard things which could enlighten us on other phases of this unfortunate accident is not at all helpful on the question of contributory negligence of Virgil Fairchild (decedent). The presumption which prevails in the absence of testimony to the contrary that one accidentally killed was not guilty of contributory negligence is based on the common knowledge of mankind that one will ordinarily exercise such care as is requisite for his own safety.   *   *   * The law presumes that he exercised reasonable care. *Gillett* v. *Michigan United Traction Co.*, 205 Mich. 410."

In *Gillett* v. *Michigan United Traction Co.*, 205 Mich. 410, plaintiff was injured while driving his automobile and could remember nothing of the accident. The only eyewitnesses were outside the car. In the instant case, plaintiff was in the car but not looking towards the driver nor paying any attention to what he was doing. She was unable to testify as to whether the driver looked to his right or not or gave external evidences of seeing defendant's car approach.

In *Jenks* v. *County of Ingham*, 288 Mich. 600, 605, 606, we held that decedent's administrator "was entitled to have the jury instructed that, unless there were eyewitnesses who could testify with respect to her actions as the car in which she was riding approached the oncoming automobile, she is presumed to have been exercising due care. *Petersen* v. *Lundin*, 236 Mich. 590; *Arndt* v. *Grayewski*, 279 Mich. 224, 230. Though there might be some dis-

pute as to whether or not there were eyewitnesses to the accident itself, no claim is made that any witness was able to testify as to the conduct of Genevieve Jenks (decedent).''

The second question arises, however, whether the presumption as to due care in the case of a dead person also exists where the person survives but is suffering from amnesia as shown by the clear and undisputed medical testimony. This question was presented in *Gillett* v. *Michigan United Traction Co., supra,* but was left undecided, the court holding that, as the physical facts testified to by the eyewitnesses of the accident conclusively showed plaintiff guilty of contributory negligence as a matter of law, it became unnecessary to decide such question. In *Thompson* v. *Southern Michigan Transportation Co.,* 261 Mich. 440, the plaintiff's driver testified that she had no recollection of the events leading up to the collision, but offered no testimony to account for such loss of memory. We held that the presumption of due care indulged in favor of a decedent should not extend to a living plaintiff who failed to show that her loss of memory was caused by the accident, or at least accounted for on some hypothesis other than self-serving convenience or advantage to plaintiff. The implication is strong, however, that, had there been such proper showing, plaintiff might have invoked the presumption.

In the instant case it was shown beyond any doubt that the loss of memory was due to concussion of the brain, resulting in unconsciousness for three days and amnesia. The testimony was uncontradicted. The question has arisen in other States and it has been held that plaintiffs who survived their injuries but whose memories did not were entitled to the benefit of the presumption of due care, the

same as if they had met their deaths. *Stotler* v. *Railway Co.,* 200 Mo. 107 (98 S. W. 509); *Heaps* v. *Southern Pennsylvania Traction Co.,* 276 Pa. 551 (120 Atl. 548); *Tubb* v. *City of Seattle,* 136 Wash. 332 (239 Pac. 1009). In these cases it does not appear that medical evidence was introduced to show that the loss of memory was due to the accident. New York, however, seems to adopt the more cautious policy of requiring the surviving plaintiff to show that his loss of memory was caused by the accident. *Drago* v. *Railroad Co.,* 139 App. Div. 828 (124 N. Y. Supp. 374). In all of these cases there were witnesses of the accident but not of the plaintiff.

The question of whether a witness was an eyewitness or not frequently does not depend upon his physical proximity to a plaintiff suffering from amnesia as to what occurred or to a plaintiff's decedent so much as upon whether the claimed eyewitness was paying attention to the conduct of plaintiff or plaintiff's decedent just before the accident. Whether contributory negligence existed or not frequently depends upon factors which are externally visible but sometimes it depends upon what passes through the mind in coming to conclusions and forming judgments. Obviously there can be no eyewitness to the latter type of conduct. The fact that the efforts made by a decedent to avoid injury were of the type not subject to observation by one nearby is no ground for withholding the benefit of the presumption of due care. *Phinney* v. *Railroad Co.,* 122 Iowa, 488, 493, 494 (98 N. W. 358). In view of the uncontradicted testimony that plaintiff's driver was suffering from amnesia, defendant in his brief properly conceding such to be a fact, we need not discuss a case where the question of amnesia was in doubt.

We believe that under the circumstances there was at least a jury question presented, and affirm the judgment for plaintiff, with costs. '

CHANDLER, C. J., and BOYLES, NORTH, STARR, WIEST, BUSHNELL, and SHARPE, JJ., concurred.