SIVAK v. SWAN ICE CREAM COMPANY.

1. HIGHWAYS AND STREETS—DETOURS.

Detour established by State highway department under statutory authority becomes part of main road (CL 1948, § 750.497).

2. AUTOMOBILES—INTERSECTIONS—RIGHT-OF-WAY.

Generally, an automobile which is required to stop at crossing yields right-of-way to other car approaching on intersecting street.

3. SAME—INTERSECTIONS—OBSERVATION.

Southbound motorist who knew that road on which he was approaching intersected detour of State trunk line highway and that his view of traffic to left was limited by a bank and trees had duty not to enter the intersection without making proper observation to see whether a vehicle was approaching on the detour and was about to enter the intersection.

4. SAME—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR TRIER OF FACT—OBSERVATION.

Questions of negligence of southbound defendant motorist on intersecting road and westbound decedent motorist on detour of State trunk line highway as they collided in intersection were properly determined as questions of fact by trial judge sitting without a jury under evidence presented which showed that decedent was travelling at speed of 45

REFERENCES FOR POINTS IN HEADNOTES

[2-4] 5 Am Jur, Automobiles §§ 287-304.
[2-4] Right-of-way at street or highway intersections.   21 ALR 974; 37 ALR 493; 47 ALR 595.
  Right-of-way as between vehicles as affected by relative distances or time of reaching intersection.   175 ALR 1013.
  Rights and duties at intersection of arterial (or other favored) highway and nonfavored highway.   58 ALR 1197; 81 ALR 185.
[6] 5 Am Jur, Automobiles § 671.

to 50 miles an hour, that detour was marked as a State trunk line highway elsewhere than at intersection involved and that defendant who knew of dangerous character of intersection and slowed down to 20 miles an hour before entering it, increased his speed to 25 miles an hour as he crossed it without having stopped or observed approach of plaintiff's decedent.

5. Same—Negligence—Contributory Negligence—Findings—Evidence—Intersections.

Trial judge's findings as matter of fact that defendant motorist was guilty of negligence and that plaintiff's decedent was not guilty of contributory negligence *held,* not against the preponderance of the evidence presented in action arising out of collision at a highway intersection on a detour of a State trunk line highway.

6. Appeal and Error—Nonjury Case—Credibility of Testimony—Speed—Distance.

The credibility of testimony as to speed and distance, given by plaintiff, administratrix of the estate of her deceased husband who was killed in accident out of which case arose, was for trial judge before whom case was tried without a jury.

Appeal from Shiawassee; Lyons (Willis L.), J. Submitted October 14, 1952. (Docket No. 73, Calendar No. 45,616.) Decided January 5, 1953. Rehearing denied March 10, 1953.

Case by Jacqueline L. Sivak, administratrix of the estate of Charles L. Sivak, deceased, against Swan Ice Cream Company, a corporation, and another for damages resulting from automobile accident. Judgment for plaintiff. Defendants appeal. Affirmed.

*V. O. Braun* and *Kenneth B. Kelly,* for plaintiffs.

*Stanton, Montgomery, MacKenzie & Cartwright* and *Warner & Hart,* for defendants.

Boyles, J. Plaintiff, widow and administratrix of the estate of Charles L. Sivak, deceased, sued the defendants for damages arising out of an automobile

collision causing his death. On trial before the court without a jury, plaintiff had judgment and defendants appeal.

The accident occurred shortly after noon, July 7, 1950, at the intersection of Irish road with Wilson road in Genesee county. Wilson road had been designated by the State highway department and marked by signs as a 5-mile detour for M–57, a trunk line highway. It was marked by "M–57" signs to indicate its character as a trunk line detour. At the place of the collision it runs east and west, intersected by Irish road which runs north and south.

Plaintiff's decedent was driving a 1941 automobile west on said M–57 detour, at about 45 to 50 miles per hour. His wife, the plaintiff, was with him. Defendant Kraatz was driving a truck south on Irish road, at about 40 miles per hour. There was no stop sign on Irish road at the intersection. He was familiar with this intersection, having driven this road about twice a week for more than a year. He knew he was approaching a "blind" intersection. He did not stop, but before he arrived at the intersection he slowed down to about 20 miles per hour, then speeded up to 25 miles per hour in crossing and was entering the intersection when he saw plaintiff's decedent's car coming from the east on the detour, about 50 to 60 feet away. His truck was hit on the left side by the automobile. His view toward the east on the M–57 detour as he entered the intersection was limited to about 50 to 75 feet by a bank and trees. He testified he knew it was a "dangerous" corner, a "blind" intersection. He testified:

"The reason I changed gears at the intersection of Wilson road is because it is a blind intersection. I have seen a lot of close calls before. I realized that it was a hazardous place so I slowed down from about 45 miles per hour to 20 miles per hour. When I got within 20 feet north of the intersection, I was going

about 20 miles per hour. When I was 20 feet from
Wilson road I could not see to the east and for that
reason I didn't look east until I got further down
the highway. I looked until I got to where you
could see. It would be a little over the edge of the
road to see down the road. Just when you get past
the intersection you can see; there are trees there
and as soon as you get by there you can see. At the
time I could see the rear end of my truck was north
of the north line of Wilson road, or M–57 and the
front end of my truck was in the intersection. I
looked to the left first and I didn't see any cars com-
ing. He wasn't there in sight. From that point you
cannot see a long distance down Wilson road, or
M–57. * * * I could see probably 50 or 75 feet
down Wilson road, or M–57. * * *

"*Q*. Well, so, not seeing anybody you continued
to drive in a southerly direction at 20 miles an hour?

"*A*. I picked up a little, about 25.

"As I crossed the intersection I increased my speed
to about 25 miles per hour and I was going about 25
miles per hour when I was hit."

The trial court held that as a matter of fact the
defendant driver was guilty of negligence and that
the plaintiff's decedent was not guilty of contributory
negligence. The question before us is whether, in
either respect, the testimony clearly preponderates
in the opposite direction. For reversal the appel-
lants urge that the detour was not an officially desig-
nated trunk line highway, that no official temporary
detour had been established, and that in the absence
of a stop sign the defendant driver was not required
by law to stop his truck at the intersection.

In 1945, the State highway commissioner legally
established as a part of State trunk line M–57 an
extension commencing on said trunk line at a point
near the east end of M–57 at the northeast corner
of section 23 in Thetford township, Genesee county,
and thence east 4 miles to join trunk line M–15 about

a mile north of Otisville. At the same time the State highway commissioner directed that pending its construction a temporary detour location should be made and be maintained as such. Such a temporary route was thereupon established, to join M–57 with M–15. Starting at the northeast corner of said section 23, where M–57 then ended, it was established and maintained on gravel roads running 1 mile south of the starting point and then east 4 miles to M–15 at Otisville. Maintenance was started and continued by the State highway department on this detour, M–57 signs put up at many places, some stop signs, curve signs, intersection signs, arrows and other road markings to indicate the detour. No stop sign was placed on Irish road at its intersection with the M–57 detour, where this accident occurred. The determination of the State highway commissioner was approved by the highway advisory board and the State administrative board, and the temporary trunk line detour where the accident occurred was legally established a part of trunk line M–57. The detour became a part of the main road.

"When State highway department closes road only partly, but it is open to use of public, as matter of right, for purposes of vehicular travel, it remains highway (CL 1929, § 4693[n]), and department may make regulations as to its use which are binding on public if they are posted on road (sections 4629, 4630).*

"Detour established by State highway department under authority of CL 1929, § 4629, becomes part of main road, and part temporarily cut off remains highway if open to travel, subject to such use and regulations as may be adopted and posted, but it loses special character attached to road from which it was taken.

---

* While said section 4629 referred to was repealed, it was re-enacted, and last amended by PA 1937, No 221 (CL 1948, § 750.497 [Stat Ann 1951 Cum Supp § 28.765]).

"Generally, automobile which is required to stop at crossing yields right-of-way to other car approaching on intersecting street." *Shoniker* v. *English* (syllabi), 254 Mich 76.

We need not consider whether it was the duty of the defendant driver to bring his vehicle to a *stop* at the intersection of Irish road with the M–57 highway detour because of absence of a stop sign.* It was his duty not to enter the intersection without making proper observation to see whether a vehicle was approaching on the detour and about to enter the intersection. He knew it was a dangerous intersection, could not see traffic approaching close by on the detour, yet entered at an admitted speed of 20 miles per hour without proper observation for other traffic, and accelerated his speed to 25 miles per hour in the intersection. Before entering the intersection he could have seen to the top of a hill 360 feet distant to his left on the M–57 detour, from which direction plaintiff's decedent was then within his view, had he been prepared to stop upon entering the intersection without attempting to cross. The automobile of plaintiff's decedent was there to be seen, approaching the intersection on the detour. The defendant driver's vision to his left on the detour was limited to 60 or 75 feet when he was less than 100 feet from the intersection. The decedent was looking toward the intersection and plaintiff, riding with her husband, the decedent, saw the defendants' truck enter the intersection when she was only about 50 feet away. Whether the defendant driver and plaintiff's decedent were guilty of negligence were properly considered as questions of fact. *Slivensky* v. *Wayne*, 307 Mich 443.

The issues of the defendant driver's negligence and whether plaintiff's decedent was guilty of con-

---

* But see PA 1949, No 300, § 651 (CL 1948, § 257.651 [Stat Ann 1952 Rev § 9.2351]).

tributory negligence were decided by the court on hearing the case without a jury. The court concluded that as a matter of fact the defendant driver was guilty of negligence which was a proximate cause of the accident, and that plaintiff's decedent was not guilty of contributory negligence. Both were proper to be considered by the trial court and decided as questions of fact and the testimony does not clearly preponderate in the opposite direction. For cases in point, see *Adams* v. *Canfield,* 263 Mich 666; *Leader* v. *Straver,* 278 Mich 234; *Ault* v. *Kuiper,* 279 Mich 1; *Pulford* v. *Mouw,* 279 Mich 376; *Arnold* v. *Krug,* 279 Mich 702; *Potter* v. *Felician Sisters Home for Orphans,* 281 Mich 101; *Breker* v. *Rosema,* 301 Mich 685 (141 ALR 867); *Slivensky* v. *Wayne, supra.*

Appellants claim that plaintiff's testimony as to speed and distance should not have been received. Its credibility was for the trial judge. Other questions raised by appellants do not change the result.

Affirmed.

ADAMS, BUTZEL, CARR, BUSHNELL, SHARPE, and REID, JJ., concurred with BOYLES, J.

DETHMERS, C. J., concurred in the result.