HANEY *v.* FREDERICK V. GENTSCH, INC.

1. AUTOMOBILES—INTERSECTION WITH THROUGH HIGHWAY—NEGLI-
   GENCE—EVIDENCE.
      Evidence presented in southbound motorist's action against de-
      fendant westbound motorist on through street for injuries sus-
      tained when cars collided at intersection at 8:30 p.m. late in
      October, *held*, as a matter of law, not to have shown defendant
      negligent.

2. SAME—NEGLIGENCE—BURDEN OF PROOF—EVIDENCE.
      The denial of defendant motorist's motions for directed verdict
      at close of plaintiff's proofs and at the conclusion of defend-
      ant's proofs and of his motion for judgment notwithstanding
      verdict was error, where, from a consideration of the evidence
      it appears plaintiff has failed to sustain his burden of proving
      defendant's negligence proximately caused plaintiff's injuries.

3. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.
      Contributory negligence necessarily implies negligence on the
      part of defendants, hence, where there was no negligence found,
      there can be no contributory negligence.

Appeal from Wayne; Brennan (Leo J.), J., pre-
siding. Submitted October 3, 1962. (Docket No. 14,
Calendar No. 49,502.) Decided December 3, 1962.
Rehearing denied February 6, 1963.

Case by Gilbert E. Haney against Frederick V.
Gentsch, Inc., a Michigan corporation, and Howard
A. Boozel for personal injuries sustained in auto-
mobile collision. Verdict and judgment for plain-

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 5A Am Jur, Automobiles and Highway Traffic § 907 *et seq.*
[2] 5A Am Jur, Automobiles and Highway Traffic §§ 911, 1017.
[3] 38 Am Jur, Negligence § 177.

tiff. Defendants appeal. Reversed and remanded for entry of judgment for defendants *non obstante veredicto*.

*Dobreff, Collins & Silverman (Morton H. Collins,* of counsel), for plaintiff.

*Alexander, Buchanan & Conklin, (G. Cameron Buchanan,* of counsel), for defendants.

KELLY, J. (*concurring*). An automobile collision occurred about 8:30 p.m. on October 29, 1956, at the intersection of Bowen and Morrell (also known as M-60), in Jackson, Michigan, and a jury awarded plaintiff $12,000 damages.

Defendants appeal, claiming there was no evidence of actionable negligence on the part of defendants; that the plaintiff was guilty of negligence as a matter of law; that the court erred in failing to direct a verdict at the conclusion of plaintiff's proofs, at the conclusion of defendants' proofs, and, also, in denying motion for judgment notwithstanding the verdict; that the court erred in failing to give defendants' requests to charge.

Plaintiff testified he drove south on Bowen until he arrived at the intersection of Bowen and Morrell, where he stopped his car because Morrell was a stop street and there was a flashing red traffic signal; that he knew the corner very well as his daughter had attended a school located at that corner for over 3 years and he had picked her up almost daily; that he stopped his car at the crosswalk about "3 or 4 feet from the curb edge in the right hand lane"; that he shifted into neutral and "looked first to the left and then to right to see if anything was coming." Plaintiff further testified that he was positive as to the way he looked "because that's the way I always did when I came to that corner"; that it was a real

clear night and the pavement was dry; that he "shifted into first and started out and then I, I saw something beyond the crosswalk in front of me, dart across the road, I shifted into second and was struck right after I crossed the center of the road"; that he had just barely got started and was driving between 5 to 7 miles per hour when he shifted into second; that after his first observation "I looked to the right again, and then I saw something in front of the car and my attention was diverted right directly ahead"; that his car was in the intersection and 2/3 of the car was across the center line when he was struck; that Bowen is 30 feet wide and Morrell is 36 feet wide and that he had traveled about 22 feet into Morrell and 2/3 over the center line when struck; that all he heard was the impact as he was knocked unconscious.

On cross-examination plaintiff testified that Morrell street is Michigan highway M–60, and M–60 is the Michigan trunkline highway that runs through the city of Jackson; that it is a through street and traffic must stop before it crosses; that he knew a red flasher required him to stop; that when he stopped at the intersection he could see "3 short blocks" to the east and there was no westbound traffic in those 3 blocks; that his car was about 17 feet long and he had traveled half the width of Morrell, plus 2/3 of his car length, when he was hit; that he had traveled 32 or 33 feet from the time he looked until he was struck. The cross-examination of plaintiff concluded as follows:

"*Q.* Well, if you don't want to answer that question, you don't know where the car came from, do you?

"*A.* No, I don't.

"*Q.* You never saw it at any time?

"*A.* Correct.

"*Q.* You looked to your left and saw no traffic approaching?

"*A.* That's right.

"*Q.* Did you ever look to your left again?

"*A.* No, I looked to the left first and saw nothing coming, and I looked to the right and saw nothing coming, and then I proceeded across.

"*The Court:* But you could see 3 blocks, is that right?

"*A.* Yes.

"*Q.* Now, while you were standing 2 to 3 feet north of the north curb of Morrell you looked to your left, you could see 3 blocks, and saw no traffic approaching?

"*A.* That is correct.

"*Q.* And you never again looked to your left on that evening?

"*A.* No."·

On redirect examination plaintiff stated that something darted across the road in front of his car on Bowen street, across the crosswalk from the west curb to the east curb, and he directed his attention to it, and testified: "I seen it was a dog or something, it diverted my attention right in front of me, and it came across the west curb here to the east curb, and went down in here."

On recross-examination plaintiff stated his car was between the crosswalk and the center line when his attention was diverted by the moving object; that the object was about 30 feet south of Morrell, and when plaintiff was asked: "And you watched that instead of looking for traffic on Morrell street?" plaintiff answered, "I had already looked for traffic on Morrell"; that he traveled from the north curb to the center of the street at 5 to 7 miles per hour and from the center line on he increased his speed to 10 to 15 miles per hour; that going at 10 to 15 miles per hour he could have stopped his car in less than 20 feet.

The recross-examination of plaintiff finished with the following questions:

"*Q.* So an object down the road 64 feet wasn't going to interfere with your crossing Morrell, was it?

"*A.* I didn't say it was going to interfere with me crossing.

"*Q.* But it diverted your attention from watching for traffic on a trunk-line highway, didn't it?

"*A.* Yes, after I had looked both ways.

"*Q.* My question is, this object or dog, whatever it was, diverted your attention from making a further observation on a trunk-line highway, right?

"*A.* Right."

Plaintiff's case consisted of his testimony, the testimony of his 18-year-old daughter, and of Thomas Ratchford, a police officer of the city of Jackson.

Plaintiff's daughter testified that her father picked her up at church shortly before the collision; that they approached Morrell at 10 to 15 miles per hour and that her father came to a dead stop at Morrell; that she saw her father look first to the east and then to the west and that she also looked; that it was a clear night but she didn't observe anything coming from either direction; that to enter the intersection her father shifted into first; that as he "reached the center of the intersection there was a screeching of brakes" and "I turned around to look" to the left or east and "I saw the headlights of the approaching vehicle" 5 or 6 feet away; that the car struck their car on the left rear third; that the impact was very forcible and the "automobile spun around 2 or 3 times at least" and "my father was thrown out of the car"; that the car came to rest "on Bowen street on the east side of the street, about 80 feet."

Thomas Ratchford, Jackson police officer, testified that he was called to the scene of the accident; that Morrell street is 36 feet 4 inches from curb to

curb and Bowen street is 30 feet in width; that Bowen street is worn asphalt; that plaintiff's car was on south Bowen, 40 feet south of Morrell, with the back end over the curb line, and the head of the car facing north and west; that defendants' car was in the intersection, facing south, and had not passed the curb line; that there were 60 feet of skid marks; that "in the intersection here, 14 foot from the east curb at this intersection there is a manhole cover. The skid marks started back of that manhole cover approximately 60 feet"; that these marks would be 46 feet back from the curb line on Morrell; that he talked to defendant Boozel and he said he was traveling 35 miles per hour.

On cross-examination Officer Ratchford testified that he made out and signed an accident report which stated: " 'There were skid marks made by the Boozel car, which extended for approximately 60 feet. These marks were to the right or to the north of the center line of Morrell street' "; that the left tire would be along the center but inches north of the center line.

The above is a complete resume of all the testimony plaintiff introduced before resting his case, at which time defendants made their motion for directed verdict.

In *Leader* v. *Straver,* 278 Mich 234, 236, we held:

"The purpose of a stop street is to afford traffic on it a preference. It is the duty of one arriving at such street not only to stop but so to remain until a reasonable opportunity to proceed appears. It would be contrary to all custom, general understanding, and the purpose of a stop street, to hold, as contended by defendants, that, after stopping, the driver immediately acquires the right-of-way as against all vehicles on the stop street which have not reached the intersection."

In *Churukian* v. *LaGest,* 357 Mich 173, 179, 180, we said:

"Plaintiff was traveling on a subordinate street, approaching a main through highway. She had a plain duty to stop, signaled by a red flasher light. CLS 1956, §§ 257.614, 257.651 (Stat Ann 1952 Rev §§ 9.2314, 9.2351). She had the duty likewise to yield the right-of-way to traffic lawfully approaching on the through highway. The purpose of the statute in requiring the driver on the inferior road to stop is plainly to require him to yield the right-of-way to traffic lawfully approaching on the main highway. *Shoniker* v. *English,* 254 Mich 76; *Leader* v. *Straver,* 278 Mich 234; *Breker* v. *Rosema,* 301 Mich 685 (141 ALR 867); *Krause* v. *Ryan,* 344 Mich 428. On the facts in this case stated in the light most favorable to her, plaintiff obviously failed to perform this duty.

"Plaintiff seems to present her case on the basis of an understanding that once she had stopped for the red flasher as required, she had discharged her statutory obligation, and that she then had equal rights at the crossing with cars on the main highway. This is not our concept of the intent and purpose of the statute. Her duty to yield the right-of-way continued, and it was her obligation to know that traffic on the main highway was clear before she undertook to cross. While this duty might not continue *ad infinitum* under extreme traffic conditions, no such extreme traffic conditions on Telegraph road at 1:30 a.m. on the morning in question are indicated in this record.

"In *McGuire* v. *Rabaut,* 354 Mich 230, this Court said (pp 238, 239):

" 'The purpose of the through highway is to move great volumes of traffic at relatively high speeds. Such purpose cannot be accomplished if our application of the standard of due care does not take into account the unique function of the arterial highway.

Thus it was that we said in *Arnold* v. *Krug,* 279 Mich 702, 707, that, "The right-of-way accorded to a driver upon a trunk-line highway is something more than the privilege of going through the intersection in advance of a car which reaches it at the same time." ' "

In *Noyce* v. *Ross,* 360 Mich 668, we held that a motorist on an inferior highway has the duty to stop before entering a State trunk-line highway, to yield the right-of-way to traffic lawfully approaching on the favored highway and to continue to yield the right-of-way until he knows that traffic on the main arterial highway is clear before attempting to cross, and that the driver on an arterial highway has a right to assume that drivers on subordinate highways will yield him the right-of-way and is not bound to anticipate negligent acts on the part of those approaching the arterial highway.

We considered an intersection collision in *Taylor* v. *Butcher,* 349 Mich 581, and held that the trial court erred in refusing to grant defendant's motion for directed verdict on the grounds that plaintiff had failed to sustain the burden of proof as to the negligence of defendant or his freedom from contributory negligence. In holding that the testimony was so incomplete, uncertain, and indefinite, so that the jury verdict could only be the result of conjecture, we said (pp 582–584):

"The plaintiff was driving south on Strait road, the defendant approaching from the west on Mosherville road. The record discloses no preference of one road over the other.

"The plaintiff testified that as he 'hit the intersection' he slowed to '5 or 10 miles per hour' (but could not be sure because he 'wasn't looking at the speedometer'). He entered the intersection, after first ascertaining in his own mind that nothing was coming. He looked both ways but he 'didn't see nothing.'

He turned to look ahead and started through the crossing. 'When I started through—I don't know why—I glanced to the right and she was there.' It was now too late to do anything; collision occurred.
\* \* \*

"Plaintiff also testified that he was in the center of Mosherville road before he first saw defendant. He stated that exhibit 2 (captioned 'Camera in center of Strait road at north edge of black-top of Mosherville road, facing west. Crest of hill is 3/10th of a mile west of center of Strait road') accurately represented the road on the day in question. 'Q. At that point what you could see went clear down to the crest of the hill? A. You can see that from here.' All of the 'dip' referred to is clearly visible in the picture, being little more than a minor rolling depression in a country highway.

"We have either quoted or summarized all of the testimony offered by plaintiff. It will be observed that we know nothing of defendant's conduct, of her speed, her manner of driving, or of her observations, or lack thereof. All that plaintiff establishes is that he first observed defendant when she was '10 or 15 feet' away and then he was struck. At this stage of the proofs our comments in the case of *Manley* v. *Potts,* 286 Mich 671, 673, 674, are particularly appropriate:

" 'The only facts that could be legitimately found from the meager evidence presented would be that an accident occurred and that plaintiff was injured. The record is barren of any evidence even remotely tending to establish defendant's negligence, if any. \* \* \* If defendant was negligent, the burden of presenting the necessary proof thereof rested upon plaintiff, and its absence was not to be supplied by a guess of the jury.' "

In the instant case plaintiff's proofs failed to establish defendant driver's negligence. Plaintiff's proofs establish contributory negligence on the part of plaintiff under the holdings above cited. The

court erred in failing to direct a verdict at the conclusion of plaintiff's proofs.

Because of our ruling in *Mitcham* v. *City of Detroit,* 355 Mich 182, we summarize the proofs introduced subsequent to the court's denial of defendants' motion at the conclusion of plaintiff's proofs.

Defendant Henry Boozel testified that he lived in Detroit; was employed by defendant Frederick V. Gentsch, Inc., and was driving from Detroit to the corporation's Elkhart, Indiana, office when the accident took place; that as he was driving toward the intersection he was on his side of the road, namely to the right of the center line; that he was traveling between 25 and 30 miles per hour; that because of a house located on the northeast corner of the intersection he did not see plaintiff's car approaching until he was 30 or 40 feet from the intersection and that plaintiff was approximately the same distance at that time from the intersection; that when he noticed plaintiff was not slowing down and realized he was not going to stop for the intersection, he applied his brakes; that plaintiff went through the light and into the intersection without stopping; that he saw the skid marks of his car after the accident and they were on the right hand side of the white line.

On cross-examination, defendant Boozel admitted that he wrongly stated in his deposition that the right-hand turn he took onto Morrell was 1 block from the intersection of Bowen, or approximately 250 feet, and that this was a mistake, as it was 3 blocks from the intersection that he turned onto Morrell; that he applied his brakes within a fraction of a second after realizing plaintiff was not going to stop at the intersection.

Defendant Boozel's testimony completed defendants' case, and defendants rested. Plaintiff then called to the stand Leo Thomas Crittendon. After qualifying the witness by showing that he was a

member of the Detroit police department and had been a member for 17 years, with specific training in the field and area of traffic work, and that he was a graduate of the traffic institute of Northwestern University, plaintiff asked the following questions:

"*Q.* Now, Sergeant, assume that you have a road that is blacktop with a worn surface, and further assume that you have skid marks of some 60 feet on this road; and further assume that you have a dry pavement; are you able to come to an estimate of approximately how fast the individual was going, assuming all these things to be true?

"*A.* I can formulate my opinion, yes, sir.

"*Q.* And what is your opinion, based upon your knowledge and background and these facts that I have given you. * * *

"*A.* I would estimate the speed to be 35 miles an hour."

We find that the trial court erred in failing to direct a verdict at the conclusion of plaintiff's proofs; at the conclusion of defendants' proofs, and, also, in denying motion for judgment notwithstanding the verdict, for the reason there was no evidence of actionable negligence on the part of defendants' driver and, further, for the reason that plaintiff was guilty of negligence as a matter of law.

Because of the above conclusion, it is not necessary to pass upon defendants' other claimed errors.

The order of the trial court denying defendants' motion for judgment *non obstante veredicto* is reversed and the cause is remanded for entry of judgment in favor of defendants notwithstanding the verdict. Costs to defendants.

CARR, C. J., and DETHMERS, J., concurred with KELLY, J.

BLACK, J. I agree that plaintiff failed to sustain his burden of proving—by testified fact or per-

missible inference from testified fact—that the defendant driver was guilty of causal negligence as charged.   That burden rested upon him at close of his case and upon him at close of the proofs. There is no occasion for another controversial stroll over the rutted cuts and fills of Michigan's law of contributory negligence and the right of a defendant to a directed verdict on assignment that plaintiff failed to sustain his burden of proof.   Such right has been curtailed by recent transfer from plaintiff to defendant of the relevant burden of proof.   See Court Rule No 23, § 3a (1945),* and *City of Dearborn* v. *Bacila,* 353 Mich 99, 108–119.

Contributory negligence "necessarily implies negligence on the part of defendants."   Hence, it having been found here that there was no such negligence, there can be no contributory negligence.   For authority see *Warwick* v. *Blackney,* 272 Mich 231, 238, following *Rockwell* v. *Grand Trunk W. R. Co.,* 253 Mich 144.

Reversed and remanded for entry of judgment for the defendants.

KAVANAGH, SOURIS, OTIS M. SMITH, and ADAMS, JJ., concurred with BLACK, J.

---

* Added April 14, 1958, to be effective June 1, 1958.   352 Mich xiv.—REPORTER.