LACAEYSE *v.* ROE.

1. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.
   In reviewing an order directing a verdict in favor of a defendant, the Supreme Court views the facts in the light most favorable to the plaintiff.

2. AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—INTERSECTIONS—HEEDLESSNESS AS TO APPROACHING CARS.
   One is not free from contributory negligence who observes an automobile coming on the intersecting street and then proceeds to cross without giving further heed to the oncoming vehicle until the instant before or at the time of collision.

3. SAME—CONTRIBUTORY NEGLIGENCE—INTERSECTION ON THROUGH HIGHWAY.
   Plaintiff motorist who stopped before entering through highway and observed defendant's car approaching some ''three or four hundred feet'' up the highway but proceeded to cross without seeing it again although his view was unobstructed and the July day was clear, *held,* guilty of contributory negligence as a matter of law barring recovery for injuries sustained in collision in defendant's right-hand portion of highway.

Appeal from Kalamazoo; Weimer (George V.), J. Submitted January 2, 1945. (Docket No. 22, Calendar No. 42,726.) Decided February 20, 1945.

Standard of conduct to which plaintiff must conform, see 2 Restatement, Torts, §§ 283-285, 463, 464; contributory negligence as a matter of law, §§ 432, 463, comment b, 464, comment a, 465, 466, comment g.

Separate actions of case by Henry Lacaeyse and Mary Lacaeyse against Carl S. Roe for personal injuries sustained in a collision between automobiles. Cases tried together. Disagreement by jury. Judgments for defendant on renewed motion for directed verdict. Plaintiffs appeal. Affirmed.

*Jackson, Fitzgerald & Dalm,* for plaintiffs.

*Howard, Howard & Howard,* for defendant.

North, J.   These two cases arose out of the same automobile accident and were tried in the circuit court as one case. The jury disagreed and was discharged by the court, whereupon the defendant renewed his motion for directed verdict of no cause of action on the ground that plaintiff, Henry Lacaeyse, was chargeable with contributory negligence as a matter of law. Both plaintiffs have appealed from the order granting this motion. The two cases are combined on this appeal; and since they are controlled by the same record, because any negligence of Mr. Lacaeyse is imputed to Mrs. Lacaeyse, we herein refer to Mr. Lacaeyse as the plaintiff.

The plaintiff's claim for damages arose out of an automobile accident occurring about 8:30 a. m. on July 4, 1942, a clear day, at the intersection of US–31 and US–31A in Muskegon county. The plaintiff, accompanied by his wife, was driving his 1934 Plymouth sedan in a southeasterly direction on US–31A, a two-lane cement highway. Defendant, accompanied by his wife and father-in-law, was driving in a northwesterly direction on US–31, a four-lane highway. Defendant was driving at least 55 or 60 miles per hour. Each driver as he approached the point of collision had an unobstructed

view. of the other's vehicle. At the point where plaintiff stopped his automobile before entering US–31 he could "see to his left approximately a half a mile all clear." There was a "Stop" sign on US–31A and a "Slow Down-Intersection" sign on US–31. The collision occurred on the defendant's left of the center line of US–31 and in the intersection where the plaintiff was in the process of making a left turn. Marks on the pavement disclosed that the defendant's car skidded 165 feet before hitting the plaintiff's car. On this appeal the negligence of the defendant may be assumed, the question being confined to the contributory negligence as a matter of law of the plaintiff.

Plaintiff testified in part as follows :

"When I got to US–31, the four-lane highway, I stopped. I looked to the right and saw nothing. I looked to the left. I saw a car approaching about three or four hundred feet up the highway, possibly more, I couldn't say for sure, and I started up in first to cross the highway. In low, first. I crossed the second lane and I shifted in second. I was entering the fourth lane when I saw a shadow and was hit. When I was in low gear I was not going over 7 or 8 miles an hour. Couldn't have been much over 7 or 8 miles an hour in second gear. The car that I saw when I stopped there, which was three to four hundred or maybe more feet away, was the car that struck me. I could not make an estimate of the speed of the car that I saw coming because the car was heading towards me. * * *

"*Q.* * * * Did you at this particular time believe that you had ample time to get across?

"*A.* Yes, sir. * * *

"*Q.* Where was your car when the actual collision took place?

"*A.* Between the third and fourth lane, entering the fourth lane.

"There is kind of a slight bend there, and I was just making that bend south. There were lines on the pavement indicating the lanes. My car was kind of on a cross like where the bend is. The front part of my car was struck, kind of on an angle like, on my left side. The front end of the other car struck me, must have been his right side. From the time when I first saw this car when it was three or four hundred feet down the road until just before it struck me, *I didn't see it again.*   \*   \*   \*

"I drove within about 5 or 10 feet of the pavement and stopped. I looked to my right; there was nothing. I looked to my left and saw a car coming about three or four hundred feet. When I saw the car coming I was stopped. When I was stopped and standing still I saw a car approaching. \* \* \*

"*Q.* How far away do you say it was?

"*A.* I will say it was three or four hundred feet, possibly more. .

"*Q.* Well, did you continue to look at it, or did you—

"*A.* (Interrupting) No, I did not.

"*Q.* Now let us understand each other about this. You saw a car coming three or four hundred feet from you approaching; you looked at it once and never looked at it again until it hit you, is that right?

"*A.* That is right. I didn't think it was necessary.

"*Mr. Howard:* I move that what he thought was necessary go out.

"*The Court:* That may go out.

"(Witness continuing): I am sure I saw it when I was standing still. I couldn't say how long I was standing still, but I came to a dead stop, just momentarily. My wheels stopped rolling. \* \* \* I took it out of gear and coasted to the highway and stopped dead still. No question about it. The car that hit me was the car that I saw approaching when I looked. I did not note the make of the car

when I looked the first time, but there was no other cars there. I heard a noise. I looked sideways and I was hit.

"*Q.* Is it a fact that you didn't see the car at all until you got into the intersection? I ask you is it a fact that you first saw Roe's car when you got into the intersection?

"*A.* When I was stopped at the intersection I first saw—

"*Q.* (Interrupting) I am asking you about when you got into the intersection. Did you see it after you got into the intersection?

"*A.* I heard it and I didn't have time to see it. * * *

"*Q.* (Referring to defendant's car) And was coming on the right-hand side of the center line? Was it on the middle of the pavement? The Buick was coming towards you in its own right-hand side; right? * * *

"*A.* He was straddle the first line.

"*Q.* But not the center line?

"*A.* Not the center line.

"*Q.* Then he was on his own right-hand side when you saw him?

"*A.* Yes sir. * * *

"*Q.* I don't want to get it any different than it is, and the way I understand you is, that when you were standing still you saw the car and you paid no more attention to it until you heard a noise and then you looked, is that right?

"*A.* That is right, and then I was hit."

The plaintiff's wife, who was riding in the front seat with the plaintiff, testified in part:

"*Q.* * * * You were facing east, weren't you?

"*A.* Yes.

"*Q.* Even then you hadn't seen that car, had you?

"*A.* No, not until he was right ready to strike.

"*Q.* Although you were facing east, you didn't see that car until it struck?

"*A.* Until we heard the noise.

"*Q.* But you didn't see the car until it struck you?

"*A.* Until right before it struck."

In reviewing an order directing a verdict in favor of a defendant we view the facts in the light most favorable to the plaintiff. We have fully considered the record and conclude that the action of the trial court must be affirmed. The record fully substantiates the trial court's conclusion that this case is governed by *Francis* v. *Rumsey,* 303 Mich. 526. The trial judge very aptly stated his 'conclusion, viz:

"If there is a disputed question of fact as to whether or not the collision occurred beyond the center line of US–31, that does not save the plaintiffs' case because if the collision did occur at the point claimed by plaintiffs it was due to the frantic effort of defendant to avoid the plaintiffs' car while it was negligently being driven into the path of defendant's fast-approaching car. The failure of plaintiffs to use the care required by the ruling in the *Francis Case* still obviously contributed to cause the collision. Had they used the care required of them, the collision could easily and undoubtedly would have been avoided."

As *Francis* v. *Rumsey, supra,* fully discusses the reasoning applicable to the instant case, we do not deem it necessary to repeat that reasoning here.

The judgment in each of these two cases is affirmed, with costs of both courts to defendant.

Starr, C. J., and Wiest, Butzel, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred.