### TRUNE *v.* GRAHL.

1. APPEAL AND ERROR—MOTION FOR JUDGMENT—EVIDENCE.
    Evidence is considered in a light most favorable to plaintiff on his appeal from order granting defendant's motion for judgment at close of plaintiff's proof.

2. NEGLIGENCE—EVIDENCE.
    A plaintiff must offer evidence that defendant was negligent and that such negligence was the cause of plaintiff's injuries in order to recover damages for such injuries.

3. AUTOMOBILES—THROUGH HIGHWAY.
    A motorist on a through highway has a duty to drive as a reasonably prudent person would drive under the existing circumstances.

4. SAME—TRUNK LINE HIGHWAY—INTERSECTIONS—RIGHT-OF-WAY—SPEED—CONTROL.
    The right of way accorded to a driver upon a trunk line highway is something more than the privilege of going through the intersection in advance of a car which reaches it at the same time as the motorist upon the trunk line is not required to have his car under such control at each intersecting road that

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error § 886.
[2] 38 Am Jur, Negligence §§ 332, 334.
[3–5] 5 Am Jur, Automobiles §§ 302–306.

he may stop at once and avoid collision with persons who may illegally come into his path.

5. Same—Through Highways—Stopping—Negligence.
   Defendant motorist on through highway who approached intersection at 40 to 50 miles per hour *held*, not guilty of negligence as a matter of law in colliding with car in which plaintiff was a passenger and which had proceeded across the highway without making a stop as required by law (PA 1949, No 300, § 671).

Appeal from Wayne; Miller (Guy A.), J. Submitted June 3, 1953. (Docket No. 31, Calendar No. 45,522.) Decided October 6, 1953.

Case by William Trune against Donald Grahl for personal injuries sustained in accident between automobiles. Judgment for defendant. Plaintiff appeals. Affirmed.

*Edgar A. Beauchamp* and *Kenneth H. Smith,* for plaintiff.

*Lacey, Scroggie, Lacey, Buchanan & Jones,* for defendant.

Sharpe, J. Plaintiff, William Trune, brought this action to recover damages for personal injuries, resulting from an automobile accident. Plaintiff, a 67-year-old farmer, was riding as a passenger in an automobile operated by Samuel Anewishki. The car was being driven in a westerly direction on highway M–72 where it intersects highway M–33 in or near the so-called village of Fairview, Michigan. On August 3, 1950, at or about the hour of 10 a.m., plaintiff and Samuel Anewishki were traveling in a westerly direction on M–72. There is a stop sign on the northeast corner of the intersection making M–33 a through highway at that point.* As plaintiff and

---

* See PA 1949, No 300, § 671 (CL 1948, § 257.671 [Stat Ann 1952 Rev § 9.2371]).—Reporter.

Samuel Anewishki approached the intersection, Samuel Anewishki did not see the stop sign until he got right up to it for the reason that there was a truck parked near the sign. Samuel Anewishki entered and proceeded to cross the intersection at a speed of 5 to 15 miles per hour. He looked to the north and saw a car approximately about a city block away. He proceeded to cross the intersection and was struck while in the westerly part of M–33. As a result of the collision, plaintiff suffered severe injuries. As plaintiff and Samuel Anewishki approached the intersection, plaintiff saw defendant's car when it was about 35 feet away and estimated its speed at 50 miles per hour.

The cause came on for trial before the court without the aid of a jury. Samuel Anewishki testified:

"*Q.* Now, witness, will you clearly tell us how the accident happened as you know and saw it, and understood it?

"*A.* Well, sir, I was coming down 72. As I got down to the intersection—the town there,—as I got down there, I couldn't see the stop sign, and as I got there, I looked to the right and I see a car coming, but it was quite a ways away.  *  *  *

"*Q.* Where did you look after you saw it the first time?

"*A.* The first time? I looked to the right, and I seen it coming. Then I looked to the left, and everything was clear to the left. So, I crossed.  *  *  *

"*Q.* Did you have an opportunity at any time before the impact to see this car coming towards you, other than the first observation that you made when you started across the intersection?

"*A.* No, sir.  *  *  *

"*Q.* By that you mean that there were cars parked on the north shoulder, or on the shoulder to your right?

"*A.* Yes, sir, as I was coming down 72, and I didn't see the stop sign until I got right up to it.

"*Q.* You did see it though before you went through the stop sign, is that right?

"*A.* Yes."

Plaintiff testified:

"I remember the 3d day of August, 1950, because that is the day I was struck and thrown out of the car. That happened at Fairview, a village in the State of Michigan. I don't know whether it is a city or a village in the State of Michigan. It is in Oscoda county. It happened in the day time about 10 o'clock in the morning. The weather was pretty clear. We were going west. I was with Sam Anewishki. We were in a Ford. I was in the front seat. Sam Anewishki was driving. I remember where this accident occurred. It was about two-thirds of the way across the intersection. I was taking in the sights all the way along and when we got in the intersection, about two-thirds of the way across, I turned and looked and the car was about 35 feet away from us and coming straight towards the front seat that I was sitting in. I just went to speak to him and he hit us in the hind wheel and fender, and smashed the fender right into the wheel; and then when it threw me out, it must have opened the door and I struck the pavement on my head and shoulder. I slid quite a ways, but I put my elbow down and waved my hands up as his car came around, as I was by the side of the car across the intersection and it kind of dazed me. The car struck the rear end of the car that I was riding in. I saw it approximately 35 feet before it struck. * * *

"*Q.* At the time that this accident happened, did you form an opinion based upon your experience of what the speed of that car was at that particular time?

"*A.* I did.

"*Q.* What was your opinion? What was your judgment of the speed of the car that hit you?

"*A.* I figured 50 miles an hour, but the driver that hit us said 35 or 40. The sheriff put it down 40 and

said it wouldn't be any less. He said that at the scene of the accident. My health before the accident was good. At that time, I was farming and putting in cement floors. My earnings before the accident was $5 a day. At the time of the accident that was about the standard wage for an average 8-hour day."

At the close of plaintiff's evidence, defendant's attorney made the following statement to the court: "The case is rested, except for medical testimony," and followed the above statement by making a motion for a judgment for the defendant for the reason that plaintiff had failed to prove any negligence whatsoever on the part of the defendant.

In granting defendant's motion, the trial court stated:

"The only evidence that we have here of what the condition of that intersection is, is that there is 1 brick store on the northeast corner, and there was a bread truck and 2 or 3 cars standing on the north side of M–72, east of M–33. That is all the testimony as to the existence of a village. So, I do not think that you can exactly say that that is a residential or business district such as to make the State statute apply fixing a 25-mile-an-hour speed in a business or residential district. We just haven't got any evidence of any residences or any business, except 1 grocery store on the northeast corner.   *   *   *

"The only point that is raised by Mr. Buchanan's motion is whether or not as a matter of law there is any evidence that the defendant was negligent in the way he approached the intersection, or if there is any evidence of negligence, does the evidence make it a prima facie case that his negligence was the proximate cause? There is no doubt about the fact that the other driver was negligent.   *   *   *

"He said that the driver of the other car said he was going 35 or 40 miles an hour, and that is all that there is in the case,—that plus the fact that there was a collision, and plus the fact that the

driver of the plaintiff's car is guilty of contributory negligence in the way he went into the intersection. It is a stop-intersection, and the man who was using the superior roadway has a right to assume that people will observe those stop-signs until a reasonably prudent man would discover that the other fellow was not going to observe the stop sign. If he was going across the road at 15 miles an hour, on a 20-foot pavement, it would take about 1 second for the front of his car to go from even with the east edge of the 20-foot pavement to the west edge of the 20-foot pavement, and when the front of his car is at the west edge, the rear of the car would be completely blocking the road. I do not see anything in the case to indicate either that the defendant was guilty of negligence in the way he drove, or assuming for the sake of the argument that he was guilty of negligence in the way he drove, that his negligence was a proximate cause. The plaintiff has got to prove not only that the defendant was negligent, but also that the defendant's negligence was at least a proximate cause of the injury. I do not think that he has done it, and I think the motion for a directed verdict will have to be granted."

Plaintiff appeals and urges that the trial court was in error in granting defendant's motion for judgment of no cause of action at the close of plaintiff's proof. There is some uncertainty in the record as to whether such motion was made at the close of plaintiff's case or after defendant waived the right to offer proof; but for the purpose of this opinion, we shall consider the motion as being made at the close of plaintiff's proof. Under such circumstances we consider the evidence in a light most favorable to plaintiff. The essence of plaintiff's testimony is that while he and Samuel Anewishki were driving on M–72, plaintiff was taking in the sights, and that when they were about two-thirds across the intersection, he looked to his right and saw defendant's car

about 35 feet away and traveling at a speed of 40 to 50 miles per hour.

There is no evidence in this case that the so-called village of Fairview is an incorporated village with an ordinance regulating speed or that the place where the collision occurred is a business or residential district. If plaintiff is to recover damages for personal injuries he must offer evidence that defendant was guilty of negligence and that such negligence was a proximate cause of such injuries. Under the circumstances of this case, it was the duty of defendant to drive as a reasonably prudent person would drive under the existing circumstances. In *Arnold* v. *Krug,* 279 Mich 702, defendant was driving east on M–81, a State trunk line highway. At the intersection of M–81 and Cemetery road, plaintiff Arnold drove north on Cemetery road, did not stop at M–81, and attempted to make a left turn on M–81. At this point the collision occurred. We there said:

"The right-of-way accorded to a driver upon a trunk line highway is something more than the privilege of going through the intersection in advance of a car which reaches it at the same time. Drivers approaching the trunkline are required to stop before entering the intersection whether anyone is at or near the crossing or in sight on the trunk highway. It is an improved road—usually hard surfaced. Its purpose is to afford rapid transit. The driver is entitled to assume that those approaching it will obey the law and stop. He is not obliged to have his car under such control at each intersecting road that he may stop at once and avoid collision with persons who may illegally come into his path. * * *

"Wallace was driving on the right side of the road at a very reasonable rate of speed and with his truck under control. The only claim of fault which could be made against him, and which the court found, is that he failed to reduce his speed as he

neared the intersection. But to what rate should he have reduced the speed? It is evident that, to have avoided the collision, he would have had to so slacken his speed that he could have stopped well within 30 feet. To impose such a duty on drivers upon trunk line highways would seriously impair their purpose, be foreign to the general conception of careful drivers of their rights and duties upon them, in large measure destroy the preferential right of way, and offer inducement to drivers approaching on intersection roads to violate their legal duties. It is not the rule as a matter of law."

In the case at bar, defendant was not driving at an excessive speed. He had no reason to anticipate the possibility that Samuel Anewishki would drive into the intersection without making a stop as required by law. The collision occurred as a result of the negligence of Samuel Anewishki and not the conduct of defendant. In our opinion, defendant was not guilty of any negligence that was a proximate cause of plaintiff's injuries.

The judgment is affirmed, with costs to defendant.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, BUSHNELL, and REID, JJ., concurred.

BOYLES, J., did not sit.