KRAUSE v. RYAN.

1. AUTOMOBILES—INTERSECTIONS—THROUGH HIGHWAYS—STOPPING—CONTINUANCE OF OBSERVATION.

Judgments for plaintiffs, husband and his wife, are affirmed, where latter was an eastbound motorist on through highway and defendant a northbound motorist whom plaintiff motorist had observed approaching on a duly marked inferior road at speed of 45 to 50 miles an hour some 160 to 170 feet from the intersection while she was proceeding at speed of 30 miles an hour some 100 feet from the intersection and had neither stopped her car nor continued her observation of defendant.

2. COSTS—CONSOLIDATED CASES.

Only 1 taxation of costs is permitted in consolidated cases.

CARR, C. J., and REID and DETHMERS, JJ., dissenting.

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur, Automobiles §§ 167, 297.
[2] 14 Am Jur, Costs § 71.

Appeal from Genesee; Elliott (Philip), J. Submitted January 25, 1955. (Docket Nos. 30, 31, Calendar Nos. 46,200, 46,201.) Decided December 28, 1955.

Separate actions of case by Frederick and Ruth Krause against Dale W. Ryan and Florence Ryan for damages arising from automobile collision. Cases consolidated for trial. Verdicts and judgments for plaintiffs. Defendants appeal. Affirmed.

*van Benschoten & van Benschoten,* for plaintiffs.

*Burroughs & Milliken,* for defendants.

SMITH, J. These 2 cases, which were consolidated for trial, arise out of an intersection collision at the junction of Bristol and Linden roads in Genesee county. In the one case, plaintiff Ruth Krause sought damages for the injuries she sustained and obtained a jury verdict in the sum of $6,700. In the other case, Frederick Krause, the husband of plaintiff Ruth Krause, obtained a verdict in the sum of $1,177.10, a judgment being entered in this amount for his expenses and loss of services.

About 5:45 o'clock in the afternoon of February 20, 1953, Mrs. Krause was driving an automobile in an easterly direction on Bristol road. At the same time defendant Dale J. Ryan, who was 17 years old at the time, was driving his mother's automobile in a southerly direction on Linden road. Bristol is a through highway at its intersection with Linden road, stop signs being posted on Linden at the appropriate corners thereof. (PA 1949, No 300, § 671 [CLS 1952, § 257.671, Stat Ann 1952 Rev § 9.2371].) Ryan at the time was on his way to attend a basketball game in Linden, Michigan, and had with him in the automobile 6 other youths, 3 of them occupy-

ing the front seat with the defendant. Upon reaching the intersection, Ryan failed to observe the "stop" sign and thereafter struck plaintiff's automobile on the left side. Approximately 1/10th of a mile before the intersection of Bristol road there was a warning sign on Linden road signifying "Stop Ahead." Defendant testified that he did not see this warning sign, or the stop sign, or the plaintiff's automobile before the accident, except that he obtained a brief glimpse of the automobile immediately prior to the impact when his brother, who was sitting in the front seat, yelled, "Look Out."

Plaintiff testified that, when approximately 450–500 feet from the intersection of Linden road, she reduced her speed from 50 to 30 miles per hour. At about 400 feet from the intersection she made observations right and left and saw no other cars approaching. She again looked to the left when approximately 100 feet from the intersection and observed defendants' automobile about 160–170 feet from the intersection, proceeding at an estimated speed of 45 to 50 miles per hour. Assuming that the defendant would stop at the intersection and that he could do so, plaintiff did not look again until defendants' automobile was practically upon her.

At the close of plaintiffs' proofs, defendants made a motion for a directed verdict on the ground that plaintiff Ruth Krause was guilty of contributory negligence. Ruling on this motion was reserved.* It was renewed again at the conclusion of all the proofs and decision again was reserved.* After the jury's verdicts, defendants moved for judgment *non obstante veredicto,* which was subsequently denied. Appellants claim that under the facts plaintiff driver failed to show freedom from, and is guilty of, contributory negligence as a matter of law, and

---

* See CL 1948, § 691.691 *et seq.* (Stat Ann and Stat Ann 1953 Cum Supp § 27.1461 *et seq.*).—Reporter.

that the trial judge erred in denying their motions for a directed verdict and subsequent motion for judgment *non obstante veredicto*. It is unnecessary to cite the numerous authorities that on a motion for a directed verdict the testimony must be considered in the light most favorable to plaintiffs.

The appellants stress our holding in *Holley* v. *Farley,* 289 Mich 676, which case also involved (at the intersection of an arterial and subordinate highway) an automobile collision. Verdict against the driver on the arterial highway was directed in the trial court and this Court upheld the direction on the ground of contributory negligence on the part of such driver. Appellants insist that our holding in the *Holley Case* justified a similar result in the case at bar.

The determination of this case requires our consideration of the rights and duties of an automobile driver upon an arterial highway as opposed to those of a driver upon an inferior or subordinate road. The former road, the arterial highway, is a highway designed to expedite the flow of traffic. Cars must of necessity move thereon in great volume and at relatively high speeds. Within the lives of many of us, travel thereon at speeds the maintenance of which, on a crowded highway, would once have been deemed negligence *per se* has become commonplace, nay required. As a consequence, the public authorities and the law have become properly solicitous of the arterial driver, driving at high speed a powerful machine in close proximity to others equally perilously engaged. Thus, the erection (as in the case at bar) of signs commanding all crossing traffic to come to a halt before venturing into the arterial road, and the judicial recognition, as in *Arnold* v. *Krug,* 279 Mich 702, 707, that the driver on an arterial highway has a right-of-way which is "something more than the privilege of going through the

intersection in advance of a car which reaches it at the same time."

The driver on the arterial, we have decided, is the favored driver. It is not necessary in approaching an intersection, as we said in *Arnold* v. *Krug, supra,* 707, that he "have his car under such control   *   *   * that he may stop at once and avoid collision with persons who may illegally come into his. path." Lacking notice otherwise, he may assume that others using the highways will comply with the rules of the road and properly posted signs and he is not guilty of contributory negligence in acting upon such assumption. It should not, however, be assumed from the foregoing that he may proceed blindly upon the arterial, secure in the supposition that he can do no wrong. He must remain alert to the hazards surrounding him and with which he is confronting others. We do not propose to attempt an enumeration of the various actions required of him. So far as the question in this case is concerned, he is undoubtedly required to make observation of the traffic apparently to cross his path from intersecting streets and to act reasonably in the light of such observation. Thus we reach the point of divergence between this case and that urged upon us by appellants, *Holley* v. *Farley, supra.* In the *Holley Case* the favored driver failed completely in this essential duty. We need not speculate as to what he might have seen had he observed and what he might then, with such information, have done as a reasonably prudent man. Cases there may well be in which even the favored driver may be negligent as a matter of law, as where he takes no action for his own safety after having observed a car approaching on a subordinate road, erratically driven, at a grossly excessive rate of speed, and threatening an imminent crossing of his path. In this extremity he may no longer rely on his favored status. He

must act as best he can for the protection of all involved. But such is obviously the unusual case. In the case before us the favored driver made the required observation of the approach of defendants' car. With the knowledge derived from such observation, plus the knowledge of her own favored status, she reached the conclusion that she could safely maintain her course and speed. She did so, but collision ensued. In such a situation reasonable minds could differ as to whether or not she exercised reasonable care and the question of contributory negligence was properly submitted to the jury. We cannot say that under such circumstances plaintiff driver was guilty of contributory negligence as a matter of law. *Breker* v. *Rosema,* 301 Mich 685 (141 ALR 867), and authorities cited therein. See, also, generally, *Marrs* v. *Taylor,* 327 Mich 674; *Trune* v. *Grahl,* 337 Mich 659; and *Soltar* v. *Anderson,* 340 Mich 242.

In so doing, do we repudiate the established case law of this State? We hold not. The answer to the cases cited by our Brother DETHMERS in support of his position is that the case law evolved in other fact situations (collisions at intersections unguarded by the peremptory posted command to stop, pedestrian cases, and the like) does not here control. We recognize, of course, that we ever seek certainty in the law, groping for that universal rule which we have but to discover and enunciate in order that justice may follow the wrong as the day the night. Have we found it in the "rule," applicable in all cases involving carelessness, that negligence is a want of that care which reasonable men would exercise under the same or similar circumstances? Having this rule, can we cite broadly from one negligence situation to another? We fear not. The field of negligence is too broad. We find within it all kinds and conditions of men, from the surgeon at the

operating table to the child at the edge of the highway, measuring with uncertain gaze and rising panic the speed of the oncoming truck against the distance to safety. Both situations, it is true, involve care, and both involve humans, but there the similarity stops. Even in that relatively narrow area of negligence involving moving vehicles, intersections, pedestrians, stop signs, arterial highways and traffic lights we find an infinite variety of problems, each with its peculiar circumstances, its unique considerations of care or the lack thereof. At the moment our problem is the determination of negligence on the high-speed, heavy-volume artery of traffic, known as the expressway, the throughway, or the arterial highway. It has its own peculiar considerations, arising out of its peculiar hazards. It cannot be solved by "rules" taken from negligence opinions in other fields. The policy behind the construction of the great expressways is not involved in the cases relating to ordinary street intersections (as to which we had a statutory right-of-way for many years and before that a common-law preference). Such cases may guide us, but they cannot control our decision here. It is for that reason that we reject as precedent on the problem before us most of the cases cited by our learned Brother. "We have constantly held," he reminds us, "that a favored driver approaching an intersection who seasonably observes another vehicle approaching it at right angles and then proceeds in reliance on the right-of-way without giving the other vehicle further heed is guilty of contributory negligence as a matter of law equally as if he had not looked at all." So we have, and so, we assume, we shall continue to hold. (But not with respect to arterial highways, guarded by the posted command to stop before entering.) He cites, for this indisputably correct statement, *MacDonald* v. *Skornia,* 322 Mich 370, 372 (dissent): ("Neither

street is a so-called stop street or preferred over the other"); *Block* v. *Peterson,* 284 Mich 88, 94: ("Plaintiff did not establish that US–10 was a stop highway"); *Koehler* v. *Thom,* 285 Mich 593, 594: ("Neither road is superior to the other, there being no stop signs at this intersection"); *Nelson* v. *Linderman,* 288 Mich 186, 188: ("Neither is superior to the other"); and *Martin* v. *City of Detroit,* 314 Mich 77, 80: ("Neither of the streets in question was a stop street"). Of the remaining 2 cases cited at this point, it does not appear from the opinion in *Boerema* v. *Cook,* 256 Mich 266, whether a stop highway was involved or not, and in *Lacaeyse* v. *Roe,* 310 Mich 591, the disfavored driver entering the stop highway from the subordinate road was found guilty of contributory negligence as a matter of law, a decision of little comfort to one urging the opposite result.

It would serve no useful purpose and unnecessarily prolong this decision were we to parse the remainder of our Brother's opinion. We might discuss in detail just what we decided in *Arnold* v. *Krug, supra,* what we said heretofore concerning it, and whether that part of the *Arnold* opinion (p 708) saying, "he (the favored driver) must keep such lookout ahead and to the sides and down intersecting highways as a reasonably prudent person would do in order to discover possible danger and must act carefully upon the existing conditions," was discussion pertinent to the driver's alleged duty to slow down as he approached the intersection. It seems, however, sufficient to observe that the precise holding was that the defendant on the trunk-line highway was free of actionable negligence "as a matter of fact and law." Justice Dethmers' cited case of *Wehling* v. *Linder,* 248 Mich 241, a 1929 case which involved a driver on a street given "the right-of-way" by city ordinance, might be discussed at length,

but Jamieson and Brown's observation in their Michigan Automobile Law (1st ed), p 61, is well taken and to the point: "It is difficult to reconcile *Wehling* v. *Linder* with the other cases in this group, especially with *Weil* v. *Longyear,* 263 Mich 22, a later decision." Likewise, the complete inapplicability of the cases involving pedestrians at intersections might detain us shortly but their differentiation under the negligence formula, "same or similar circumstances," seems obvious.

The fact of the matter is that we have an acute problem on our highways and it is getting more acute with every newly-built turnpike, every newly-constructed expressway. If we reach, with respect to it, a reasonably sound solution we will have done more than passing well, and the problem of the pedestrian, of collisions at unguarded intersections, and of the myriad other traffic situations may well wait their day before us. It is not today. Today's problem is this: What constitutes negligent driving for a driver on a throughway when he sees approaching a driver on a subordinate side road? Much could be said for the solution reached by Maryland, that the arterial driver has an absolute right-of-way, provided he is driving in a lawful manner. See *Greenfeld* v. *Hook,* 177 Md 116 (8 A2d 888, 136 ALR 1485); see, also, *Morris* v. *Bloomgren,* 127 Ohio St 147 (187 NE 2, 89 ALR 831). It is our opinion, however, that at this time the question of due care should normally remain a jury question. Why? For answer we turn to Mr. Justice Holmes, in The Common Law, p 150:

"The question what a prudent man would do under given circumstances is then equivalent to the question what are the teachings of experience as to the dangerous character of this or that conduct under these or those circumstances; and as the teachings of experience are matters of fact, it is easy to see

why the jury should be consulted with regard to them. They are, however, facts of a special and peculiar function. Their only bearing is on the question, what ought to have been done or omitted under the circumstances of the case, not on what was done. Their function is to suggest a rule of conduct."

We reject, then, the theory that the arterial driver who has made one observation of the car burdened with the peremptory command to stop, has thereupon determined that it is safe to proceed, has made another within a hundred feet of the intersection and has thereupon reached a like decision, is negligent *as a matter of law* in not making additional observations. When is the observational duty discharged? At 75 feet? At 50 feet? Must there be continuous observation? Our rules of conduct must be both realistic and workable. If the driver on today's arterial highway remains alert to the hazard immediately ahead of him, to his right, to his left, and does not fail to keep constantly in mind the driver crowding him from the rear, he is doing a reasonably good job of driving. Whether or not he should, in addition to these tasks of considerable magnitude, also keep under more or loss continuous observation the driver approaching the arterial from some side road is, under our present law, a question for the jury. It is their function, as stated by Mr. Justice Holmes, to suggest a rule of conduct based on their experience with respect to the dangerous character of such conduct. Our cases there leave it and we should not, in the present state of traffic, disturb. The Maryland and Ohio solutions may some day come to Michigan. That day is not now. But we should not, in grasping at the shadow of universality, of certainty in the law, lose our grip on reality. The reality is that our through highways carry vast amounts of traffic at high speeds and demand the utmost from a driver thereon. In these sur-

roundings of imminent peril we will not, as a matter of law, rivet his gaze to a side road. We will not add to his burdens, and his dangers, and the dangers of those around him, by a judge-made and impossible rule of conduct.

The judgments in both cases are affirmed. Plaintiffs shall recover costs, but only 1 taxation is permitted in consolidated cases.

BUTZEL, SHARPE, and KELLY, JJ., concurred with SMITH, J.

BOYLES, J., concurred in affirmance.

DETHMERS, J. (*dissenting*). I do not concur in affirmance. Plaintiff's failure to "look again" while driving the last 100 feet to the point of impact constituted contributory negligence as a matter of law, under our previous decisions, barring the right to recover. In *Holley* v. *Farley*, 289 Mich 676, plaintiff's driver was travelling on a through highway at 30 miles per hour; when 150 feet from the intersection he looked to his right, but his view was obstructed and he did not look in that direction again until an instant before the collision, although one of his passengers, when they were 80 feet from the center of the intersection, saw defendant's automobile coming from the right 125 feet from the center of the intersection, travelling at 45 miles per hour; defendant failed to stop for the stop sign. This Court held plaintiff's driver guilty of contributory negligence as a matter of law for failure to maintain a reasonable and proper lookout for approaching traffic. Mr. Justice SMITH would distinguish the instant case from *Holley* in that there the favored driver at no time observed defendant's approaching automobile (he looked when 150 feet from the intersection, but his view was obstructed),

while here plaintiff, when 100 feet from the inter-
section and travelling at 30 miles per hour, observed
defendant 160 to 170 feet therefrom travelling from
45 to 50 miles per hour. The distinction is of scant
benefit to plaintiff under our previous holdings. We
have constantly held that a favored driver approach-
ing an intersection who seasonably observes another
vehicle approaching it at right angles and then
proceeds in reliance on the right-of-way without
giving the other vehicle further heed is guilty of
contributory negligence as a matter of law equally
as if he had not looked at all. *MacDonald* v. *Skornia,*
322 Mich 370; *Boerema* v. *Cook,* 256 Mich 266; *Block*
v. *Peterson,* 284 Mich 88; *Koehler* v. *Thom,* 285 Mich
593; *Nelson* v. *Linderman,* 288 Mich 186; *Lacaeyse*
v. *Roe,* 310 Mich 591; *Martin* v. *City of Detroit,* 314
Mich 77. Accordingly, decision in *Holley* is control-
ling here. In *Wehling* v. *Linder,* 248 Mich 241, plain-
tiff's automobile, travelling on a through street, was
struck by defendant's truck, which failed to stop
for the through street as required by ordinance.
Plaintiff and her driver saw the truck when it was
100 feet distant, but gave it no further heed, as-
suming that the driver would accord them the right-
of-way. This Court held plaintiff and her driver
guilty of contributory negligence as a matter of law
for failure "to continue to make reasonably careful
observations of the approaching truck." While
judgment *non obstante veredicto* was upheld therein
as to 2 defendants on another ground as well, this
ground was requisite to the holding in favor of the
third defendant. That case is equally controlling
here. Analogous are *Kerr* v. *Hayes,* 250 Mich 19;
*Block* v. *Peterson, supra; Koehler* v. *Thom, supra;*
and *Afman* v. *Kraker,* 305 Mich 504, and others of
like circumstance and import in which plaintiff
drivers enjoying the statutory right-of-way at inter-
sections were held guilty of contributory negligence

as a matter of law for contenting themselves with
reliance thereon and failing to maintain a reason-
able and proper lookout or to give heed to approach-
ing traffic, this Court saying that the right-of-way
is not an assurance of safety which excuses the hold-
er thereof from the duty of making proper observa-
tion.   The principles involved in those cases are
applicable and controlling here.   The same may be
said of *Steele* v. *Hamilton,* 218 Mich 522; *Sloan* v.
*Ambrose,* 300 Mich 188; *Long* v. *Garneau,* 319 Mich
291; *Boyd* v. *Maruski,* 321 Mich 71; and *Ashley* v.
*Kilborn,* 333 Mich 283, in which plaintiff pedestrians
crossing intersections under protection of green traf-
fic lights were, for failure to maintain a reasonable
and proper lookout for approaching traffic, held
guilty of contributory negligence as a matter of law.
As said by Mr. Justice CARR in *Ortisi* v. *Oderfer,* 341
Mich 254, 277, in speaking of the *Ashley Case:*

"The principles there recognized and applied find
support in the cases above cited, and are likewise
in harmony with other recent decisions, among which
are: *Morse* v. *Bishop,* 329 Mich 488; *Zivas* v. *Jin-
kins,* 329 Mich 659; *Cioffari* v. *Blanchard,* 330 Mich
518; *Ludwick* v. *Hendricks,* 335 Mich 633; *Levine* v.
*Schonborn,* 336 Mich 312; *Denman* v. *Youngblood,*
337 Mich 383; *MacKenzie* v. *Sternicki,* 338 Mich 487;
*Letcher* v. *Robinson,* 340 Mich 350."

Challenged in the instant case is the trial court's
denial of defendants' motions for directed verdict
and judgment *non obstante veredicto.*   The precise
question for our determination narrows down to
whether plaintiff's failure to "look again" during
the last 100 feet before collision gives rise to a ques-
tion of fact or a question of law as to contributory
negligence.   Mr. Justice SMITH holds it to be a ques-
tion of fact for the jury.   I do not agree that *Arnold*
v. *Krug,* 279 Mich 702, is authority for that view.
In the first place, this Court did not hold in that

case that the question of the negligence of the driver
on the favored highway was one of fact for the
jury, but, on the contrary, determined that, as a
matter of law, he was free from negligence. In the
second place, "the only claim of fault" or negligence
charged against him was failure to slow down as
he approached the intersection. This Court held
that as a matter of law a driver on a favored high-
way is not required to slow down for every inter-
section in the absence of circumstances disclosing
the necessity therefor. Failure on the part of the
favored driver to make proper observation was not
so much as discussed by this Court in that case. In
consequence, it is not authority for the proposition
that such failure presents a question of fact rather
than one of law.

Also relied upon as holding that the question of
plaintiff's contributory negligence in failing to main-
tain a proper lookout is one of fact for the jury
are *Breker* v. *Rosema,* 301 Mich 685 (141 ALR 867),
and cases therein cited. In *Breker,* plaintiff's driver,
travelling the favored highway, suffered an accident-
induced amnesia and because there was no eyewit-
ness on the point or testimony to the contrary, this
Court indulged the presumption that he had main-
tained a reasonable and proper lookout. Proceeding
on the assumption that he had maintained such
lookout and the presumption that he was thus free
from contributory negligence in that respect, this
Court held that whether he was guilty of contribu-
tory negligence by reason of his established acts or
failures to act, other than those relating to making
proper observation, as he approached and entered
the intersection, presented a question of fact for
the jury. This Court did not hold in that case that
failure to look for a given distance presents a jury
question of fact as to contributory negligence. The
pertinent cases cited in *Breker* are *Potter* v. *Felician*

*Sisters Home for Orphans,* 281 Mich 101; *Campbell*
v. *Osterland,* 283 Mich 175; and *Rife* v. *Colestock,*
297 Mich 194. In *Potter* all occupants of both cars
involved were killed by the accident or deceased at
time of trial. Although this Court did not mention
the presumption of freedom from contributory neg-
ligence on the part of plaintiff's driver, who was
travelling on the favored highway, there was equally
as much reason to do so as in *Breker.* This Court
did say that there was no evidence that plaintiff's
driver had proceeded heedlessly and stressed that
the only evidence on that phase of the case was that
she had swerved her car to the right just before
the impact, indicating that this constituted evidence
from which an inference might be drawn that she
had made proper observation and exercised due care
to avert the accident, thus leaving the question of
her contributory negligence one of fact. In *Camp-
bell* the favored driver testified that when he was
some 100 feet from the intersection he observed that
defendant's car had stopped for the through high-
way; and in *Rife* it was testified that defendant's
car slowed down momentarily upon approaching the
stop sign. Consequently, in both of those cases, as
this Court observed in *Rife,* if plaintiff, on the fa-
vored highway, had looked he would have had reason
to believe that he was being accorded the right-of-
way and that he could proceed in safety; accordingly,
a question of fact was presented in each as to wheth-
er plaintiff's failure to maintain a continuing lookout
was a proximate cause of the accident rendering
plaintiff guilty of contributory negligence. Those
cases are not in point in the instant case where
plaintiff admittedly did not look for the last 100
feet and there is nothing in the record to show, as
in those cases, that a proper lookout would have
proved unavailing to avert the accident. The burden

of making such showing rested on plaintiff and was not sustained.

Our attentions are also directed by Mr. Justice SMITH to *Marrs* v. *Taylor,* 327 Mich 674; *Trune* v. *Grahl,* 337 Mich 659; and *Soltar* v. *Anderson,* 340 Mich 242. *Marrs* presented a disputed question of fact as to whether plaintiff's automobile, travelling on the favored highway, was struck in the intersection or, as plaintiff claimed, after it had passed through it. Under plaintiff's version of the facts the case called for application of the familiar rule that when the favored driver failed to maintain a proper lookout the question of whether that failure constituted contributory negligence is one of fact rather than law if the collision occurred in that part of the intersection which represented defendant's wrong side of the road or where plaintiff would not have expected defendant to drive even if he had seen him. Characteristic are the so-called "swerve" cases, in which, at the last moment before the collision, defendant swerved to his left side of the road. The question in such cases is not so much whether plaintiff's failure to look constituted negligence, but whether such negligence was "contributory", that is, a proximate cause of the accident; and so it is that in *Marrs* this Court said (pp 677, 678), "reasonable minds may differ as to whether Mr. Marrs had made proper observations and, if not, whether such negligence, if any, *contributed to the accident."* There is nothing in the case at bar to bring it within the "swerve" case exception. In *Trune* the defendant was on the favored highway. Plaintiff had the burden of showing negligence on defendant's part. There was no testimony that defendant had failed to maintain a proper lookout. This Court held in effect that failure of defendant to maintain a proper lookout could not be inferred from the mere fact that he failed to stop

when it became apparent that plaintiff was going to enter the intersection in disregard of the stop sign, inasmuch as defendant, under authority of *Arnold* v. *Krug, supra,* was not required to drive in such manner that he could unfailingly stop for every intersection at which a driver approaching from right angles neglected to heed the stop sign. *Trune* did not involve a situation, as at bar, in which the favored driver admittedly did not look for the last 100 feet. In *Soltar* this Court held that it was error to charge a jury that negligence may not be inferred from established facts and that such error was prejudicial in that case because plaintiff's claim that defendant had failed to maintain a proper lookout was dependent for support on the inferences to be drawn from testimony concerning how defendant had operated his automobile. The case presented no question, as here, as to whether a driver on a favored highway may neglect to maintain a proper lookout and escape being held guilty of contributory negligence as a matter of law.

Recognition of the fact that within the memories of most of us the numbers and speeds of automobiles have increased in fantastic proportions is scarcely persuasive of the conclusion that the need for maintenance of a proper lookout by drivers has decreased. While this Court did say in *Arnold* v. *Krug, supra,* 707, that, "The right-of-way accorded to a driver upon a trunk-line highway is *something more* than the privilege of going through the intersection in advance of a car which reaches it at the same time," this Court has never held that that "something more" includes the right to proceed into and through the intersection without maintaining a proper lookout. The right-of-way is not an assurance of safety upon which one may absolutely rely, but, on the contrary, he must use due care for his own safety. *Kerr* v.

*Hayes, supra.* As said in *Kerns* v. *Lewis*, 246 Mich 423, 428:

"While the law accords the right-of-way, it requires, as well, the exercise of at least 'horse sense.' The statute does not authorize one, in approaching a highway crossing, to assume that in all events he may proceed without looking, or, if unable to see, without exercising precaution commensurate with reasonable prudence."

Lest the quoted language be thought to smack too much of the horse and buggy days with diminished applicability to the present motorized age, it may not be inappropriate to observe that there is an even greater urgency for the exercise of "horse sense," for eternal vigilance and the maintenance of a constant lookout on the part of today's drivers of mechanized horsepower than in the days gone by when Old Dobbin was at least reputed to know the way home. A holding that the question of the contributory negligence of a plaintiff who, as here, proceeded for 100 feet without looking again, serene in the assumed assurance of safety afforded by the right-of-way, should be left to the speculations of a jury and escape being branded for what it is as a matter of law seems to me nothing less than an open invitation to recklessness and consequent disaster in a day when traffic and speed make a constant lookout a prime requisite to survival in the race of the quick and the dead.

In conclusion, it is to be noted that there is no allegation in the pleadings nor one shred of evidence in the record to suggest that the through highway on which plaintiff was travelling was a "high-speed, heavy-volume artery of traffic, known as the expressway" or that it was one of Michigan's "great expressways," or a "turnpike."

The judgments should be reversed, without a new trial and with costs to defendants.

CARR, C. J., and REID, J., concurred with DETH-MERS, J.