### EVANS v. FERRY.

1. AUTOMOBILES — NEGLIGENCE — INTERSECTIONS — THROUGH HIGHWAYS.

Finding of trial judge that there was no evidence of negligence on the part of defendant eastbound truck driver on through highway in Indiana, in action by administrator of estate of guest passenger in northbound passenger car on stop road arising out of collision at intersection *held*, supported by record.

2. SAME—NEGLIGENCE—ASSURED CLEAR DISTANCE—SPEED—NIGHTTIME—OBSERVATION.

Eastbound truck driver on through highway in Indiana was not guilty of negligence as a matter of law in action brought by

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5A Am Jur, Automobiles and Highway Traffic § 1013.
[2] 5A Am Jur, Automobiles and Highway Traffic §§ 290, 291.
Liability for motor vehicle accident where vision of driver is obscured by smoke, dust, atmospheric condition, or unclean windshield. 42 ALR2d 13.

administrator of estate of guest passenger of northbound pas-
senger car which ran into right side of tractor-trailer com-
bination at intersection, where evidence shows accident oc-
curred during a foggy evening, that the truck driver, when
a block from the intersection, noticed the northbound lights,
observed the decedent's car was slowing down, and concluded
it was going to stop, that he looked to the north where his
view was somewhat obstructed and although traveling only 35
miles per hour was unable to stop when he became aware of
the fact that decedent's car was not going to stop in obedience
to signs which he knew were there, the assured clear distance
rule not being applicable where the decedent's car was not at
any time in front of defendant's equipment.

Appeal from Berrien; Hadsell (Philip A.), J.
Submitted January 14, 1959. (Docket No. 73, Cal-
endar No. 47,618.) Decided April 14, 1959.

Case by James E. Evans, administrator of the
estate of Mary F. Evans, deceased, against Stanley
L. Ferry and Fruit Belt Motor Service, Inc., a Mich-
igan corporation, for damages arising from fatal
injuries received in a collision of motor vehicles.
Directed verdict and judgment for defendants.
Plaintiff appeals. Affirmed.

*Iverson & Allin,* for plaintiff.

*Seymour & Seymour (Dale A. Seymour,* of coun-
sel), for defendants.

CARR, J. Plaintiff administrator brought this ac-
tion to recover damages for the death of his decedent,
claimed to have resulted from negligence on the
part of the defendants. During the evening of April
25, 1956, Mrs. Evans, her 2 daughters Edith and
Kathleen, and a friend were en route from Oakland
county, Michigan, where they resided, to the State of
Alabama. The accident in which decedent sustained
fatal injuries occurred shortly before midnight in

LaGrange county, Indiana, at the intersection of Indiana route 3 and US trunk-line 20.

At the time, the automobile, which was owned by Kathleen, was being driven by Edith in a northerly direction on the first-named highway. Defendant Ferry was operating a tractor-trailer combination in an easterly direction on the trunk line. The latter road was a so-called through highway, and signs were placed on the intersecting road on which the Evans car approached, imposing the duty to stop before entering the intersection. However, the driver of the Evans car did not see the signs, nor did any of the occupants of the car call her attention thereto. In consequence, the automobile proceeded into the intersection and struck the tractor of defendants' equipment on the right side, with such force as to cause it to go into a ditch at the side of the road. As before stated, Mrs. Evans, who was riding in the rear seat with her friend, sustained fatal injuries, and the death of the friend likewise resulted.

The declaration filed by plaintiff in the cause alleged that defendant Ferry, who was an employee of the corporate defendant, was subject to the rules of the common law and the statutes of the State of Indiana in the operation of the tractor-trailer combination, and that he violated the duties resting on him by driving without due care and caution, at such a rate of speed that he could not stop within the assured clear distance ahead, and that he was driving without lights. It was further averred that plaintiff's decedent was a guest passenger in the automobile of her daughter. No question of imputed negligence is involved in the case.

At the conclusion of plaintiff's proofs defendants moved for a directed verdict. Said motion was not determined at the time and defendants introduced testimony with reference to the character of the intersection signs, on the State highway, indicating

approach to trunk-line 20. It was the claim on behalf of defendants at the time that plaintiff's proofs did not disclose any basis for a finding of negligence on the part of the driver of the tractor-trailer, and that the sole proximate cause of the accident was negligence of the driver of the Evans car. The trial judge concluded from the record that the testimony with reference to the operation of defendants' equipment was insufficient to permit the issue of negligence to be submitted to the jury. Accordingly the verdict was directed, and plaintiff has appealed. The sole question raised is whether the trial judge was in error in declining to submit the matter of defendant Ferry's negligence to the jury.

On the trial of the case Edith and Kathleen Evans were called as witnesses for the plaintiff. Their testimony disclosed that when they left the city of Fort Wayne, Indiana, they intended to proceed south on route 3. Instead of doing so the driver inadvertently proceeded north toward the intersection where the fatal accident occurred. After they had driven for some distance the members of the party began to have doubts as to their being on the right road. In consequence, they sought information at a restaurant where they stopped, but without success, and each occupant of the car, as it is claimed, kept an outlook for signs that would inform them whether or not they were driving in the right direction.

The driver of the automobile described the atmospheric condition as being foggy, but stated that the range of her lights was approximately 300 feet and that she could see ahead for that distance. Apparently the road signs were not observed as the car approached US trunk-line 20, nor does it appear that any of the occupants noticed the approach of defendants' equipment on the trunk line. The driver testified that she had no recollection as to how the accident occurred. Kathleen, who was riding in the

front seat with the driver, likewise was unable to testify to the occurrence. There is nothing in the testimony of either of decedent's daughters indicating negligence on the part of defendant Ferry.

The driver of defendants' equipment was called by plaintiff for cross-examination.* If there is anything in the record to support appellant's claim of error it must be found in defendant Ferry's testimony. The trial judge concluded after listening to the witnesses that there was no evidence of negligence on the part of said defendant constituting a proximate cause of the accident. Our examination of the transcript returned here as a part of the original record in the cause brings us to a like conclusion.

Defendant Ferry testified, in substance, that at the time of the accident he was en route from St. Joseph, Michigan, to Clyde, Ohio, that his equipment was transporting a load of washing machine parts weighing approximately 8,900 pounds, that prior to his approach to the intersection of US trunkline 20 with Indiana route 3 he was driving 40 miles per hour, but that he decreased his speed to 35 miles per hour before entering said intersection. He further testified that he made observations as he proceeded, that he noted the lights of a car coming north on the State road when he was approximately 1/2 mile to the west, that he observed the lights from time to time, that the car, which is conceded to have been the Evans automobile, slowed down, and that he assumed that it was going to stop before attempting to cross the trunk line. He was aware of the highway signs on route 3. As he came in proximity to the intersection he looked to the north, in which direction his view had previously been somewhat obstructed, to see if traffic was approaching from that direction. He did not discover that the Evans car

* See CL 1948, § 617.66 (Stat Ann § 27.915).—REPORTER.

was not stopping until he was immediately in front of it and its lights were shining into the cab window of the tractor. The impact followed, without opportunity to avoid it.

The witness further testified that at the time of the accident the headlights of his tractor were on high beam, and that the clearance lights on the cab and on the trailer were on. The testimony as to the condition of the lights is not disputed. There is no basis in the proofs to support the averment of the declaration in this respect. Neither is there any basis for the application of the "clear distance ahead" rule, recognized in the State of Indiana, for the obvious reason that the Evans car was at no time in front of defendants' equipment. Neither may it be said that defendant Ferry was driving at an excessive rate of speed under the traffic conditions existing at the time and place in question. The undisputed testimony is that he made observations as he approached the intersection, observed the lights of the Evans car as it approached the trunk line, concluded that it was slowing down when approximately a block away, and assumed that it would stop in obedience to the highway signs before entering the intersection. Ordinary care and caution required that he make observations to the north for possible approaching traffic. It does not appear that there was anything in the situation to indicate to him that the driver of the Evans car would not obey the law and duly observe the stop sign.

It may be noted further that the testimony of the driver of the car in which decedent was riding indicated that it was proceeding at a speed of between 20 and 25 miles per hour. Obviously such rate would not indicate an intention to enter the intersection without stopping. In considering the proximate cause of the accident it must be borne in mind that defendants' equipment entered the intersection first,

proceeding in an easterly direction on the south side of the trunk line, and that the Evans car, approaching from the south and presumably on the east side of route 3, ran into the right side of the tractor.

In *Pennsylvania R. Company* v. *Huss,* 96 Ind App 71 (180 NE 919), there were involved issues somewhat analogous to those in the case at bar. There a passenger in an automobile, in which she was riding as a guest, sought to recover damages from the defendant railroad company for injuries sustained as a result of the automobile running into a freight train that was blocking a crossing. In holding that there could be no recovery, and citing numerous decisions, including *Ruth* v. *Vroom,* 245 Mich 88 (62 ALR 1528), it was said (pp 82, 83):

"We are of the opinion that the sole proximate cause of the injury in this case, as disclosed by the uncontroverted evidence, was the negligence of the driver of the automobile in which appellee was riding, in driving said vehicle into and against appellant's freight car. At most it can only be said that appellant, by permitting its freight car to remain standing on said crossing, created an unconcealed condition in which Miss Menzel's negligence operated to bring about the collision. Considering the undisputed evidence we can not escape the conclusion that the injury to appellee was caused by the subsequent independent act of the driver of the automobile, and that the condition created did not in any manner cause or contribute to the negligence of such driver."

In *Arnold* v. *Krug,* 279 Mich 702, an automobile in which the plaintiff's decedent, a girl 17 years of age, was riding, entered a State trunk line from an intersecting road without stopping, the driver undertaking to make a short turn to the left. The automobile was struck by defendant's truck and the plaintiff's decedent severely injured. Each party submitted a motion for directed verdict following the introduc-

tion of proofs. In holding that the defendant was not liable under the facts and circumstances disclosed by the evidence in the case, it was said (pp 707–709):

"The right-of-way accorded to a driver upon a trunk-line highway is something more than the privilege of going through the intersection in advance of a car which reaches it at the same time. Drivers approaching the trunk line are required to stop before entering the intersection whether anyone is at or near the crossing or in sight on the trunk highway. It is an improved road—usually hard surfaced. Its purpose is to afford rapid transit. The driver is entitled to assume that those approaching it will obey the law and stop. He is not obliged to have his car under such control at each intersecting road that he may stop at once and avoid collision with persons who may illegally come into his path.

"On the other hand, he must keep such lookout ahead and to the sides and down intersecting highways as a reasonably prudent person would do in order to discover possible danger and must act carefully upon the existing conditions.

"A driver cannot be convicted of negligence on a general charge that he did not exercise the care a prudent person would have used under the circumstances. It is necessary to charge and prove the specific act he did or did not do. Wallace was driving on the right side of the road at a very reasonable rate of speed and with his truck under control. The only claim of fault which could be made against him, and which the court found, is that he failed to reduce his speed as he neared the intersection. But to what rate should he have reduced the speed? It is evident that, to have avoided the collision, he would have had to so slacken his speed that he could have stopped well within 30 feet. To impose such a duty on drivers upon trunk-line highways would seriously impair their purpose, be foreign to the general conception of careful drivers of their rights and duties

upon them, in large measure destroy the preferential right-of-way, and offer inducement to drivers approaching on intersection roads to violate their legal duties. It is not the rule as a matter of law.

"Nor as a matter of fact was such duty to slacken speed imposed on Wallace. He was obliged to anticipate such possible danger in the intersection and do such acts to avoid it as a reasonably prudent person would have anticipated and done, if such person had the knowledge of the situation which Wallace possessed and had the right to assume that one about to enter the trunk highway at the intersection would perform his legal duty to stop and look for traffic.
* * *

"Reduced to its essentials, Wallace was driving at a reasonable rate of speed and without duty or reason to anticipate the possibility of such extraordinary conditions as Doerr brought about, the danger did not appear until it was too late for Wallace to avoid an accident, and the proximate cause of the collision was the negligence of Doerr and not the conduct of Wallace."

The above case has been cited with approval in later decisions, including *Trune* v. *Grahl*, 337 Mich 659. The factual situations involved in both these cases were similar. It may be noted that in each case the car in which the injured party was riding was struck by defendant's motor vehicle. However, such was not the situation in the instant controversy. Defendants' equipment was first in the intersection and was struck broadside by the Evans automobile.

Each case of this kind must be determined on the basis of the facts involved. Counsel for appellant have cited certain decisions in support of their claim that the trial court was in error in directing a verdict for defendants. All of such cases may be distinguished from the case at bar on the basis of the facts. *Blasengym* v. *General Accident, Fire & Life Assurance Corporation, Limited,* 89 Ind App 524

(165 NE 262), involved an intersection accident, neither thoroughfare being preferred. At issue was the claimed preference on the part of the driver of one of the vehicles, which approached the intersection from the right. Under the testimony, questions of fact for the determination of the jury were clearly presented. In *Standard Oil Company of Indiana* v. *Thomas,* 105 Ind App 610 (13 NE2d 336), plaintiff Thomas approached a preferred highway on an intersecting road. He claimed that he stopped before entering said road, made observations, concluded that he had time to cross in safety, and undertook to do so. Defendant's truck, driving in a heavy fog at 45 miles per hour, struck plaintiff's automobile, causing personal injuries and property damage. Under the proofs it was held that issues of fact were presented for the determination of the jury, and a verdict in plaintiff's favor was upheld.

In *D. Graff & Sons* v. *Williams,* 115 Ind App 597 (61 NE2d 72), there was evidence that the defendant's truck was driven in a residential section of the city of Gary at a rate of speed materially in excess of the legal limitation. While so driven it ran into the automobile of plaintiff, which entered the intersection first. In *Graf* v. *Garcia,* 117 Cal App2d 792 (256 P2d 995), the district court of appeals of the first district, division 2, California, reversed a judgment in defendant's favor. The defendant in that case was driving on a through highway. Plaintiff's decedent undertook to cross said highway from an intersecting street. There was testimony that he stopped his automobile before doing so, and there was also testimony that the defendant was guilty of negligence in that she saw the car of plaintiff's decedent when it was approximately 80 feet from the thoroughfare on which defendant was driving, the latter at the time being some 300 or 400 feet from the intersection. She did not make any further observa-

tion until the instant of collision, proceedng into the intersection without slackening her speed. Involved in the case was a presumption of due care on the part of the decedent, as well as the issues of negligence on the part of both drivers. Apparently no claim was made that the testimony did not require submission to the jury. The judgment in defendant's favor was reversed because of errors in the charge. Like the Indiana cases above cited, the facts involved in the California case are not analogous to the factual situation in the case at bar as disclosed by the testimony.

The trial judge was not in error in directing a verdict for the defendants, and the judgment entered is affirmed.

Dethmers, C. J., and Kelly, J., concurred with Carr, J.

Black, J. (*concurring*). Mr. Justice Carr's quotation from and reliance on *Arnold* v. *Krug,* 279 Mich 702, has no right or place in this suit to recover damages resulting from an automotive collision which occurred in Indiana. What is more, the worth of *Arnold* v. *Krug* as Michigan precedent has been diluted if not drained entirely from our reports. See opinion of Mr. Justice Smith in *Krause* v. *Ryan,* 344 Mich 428, 435–438 (followed in *Hicks* v. *Gillespie,* 346 Mich 593, 599; *Ware* v. *Nelson,* 351 Mich 390, 396; *Samyn* v. *Bublitz,* 352 Mich 613, 618; *McKinney* v. *Yelavich,* 352 Mich 687, 696).

Aside from the above, I concur in the reasoning, and the decision to affirm, of our Brother.

Smith, Edwards, Voelker, and Kavanagh, JJ., concurred with Black, J.